Mary T. GRACE, et al., Plaintiffs,

v.

Warren E. BURGER, et al., Defendants.

Civ. A. No. 80–1205.

United States District Court, District of Columbia.

Aug. 7, 1980.

Sebastian K. D. Graber, Bradley S. Stetler, Alexandria, Va., for plaintiff.

R. Craig Lawrence, Asst. U. S. Atty., Washington, D. C., for defendant.

MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs seek to enjoin Supreme Court police officials who threatened to arrest the

plaintiffs when they peacefully displayed signs and distributed leaflets on the sidewalk in front of the Supreme Court building. Plaintiffs also seek a declaration that the statutes relied upon by those officials as the authority for the threatened arrests are unconstitutional. 40 U.S.C. § 13k; *see also* 40 U.S.C. § 13*l*.[1]

### A.

The essential facts are not in dispute. Plaintiff Mary Terese Grace entered upon the sidewalk in front of the Supreme Court building shortly after noon on March 17, 1980, and began to display a sign, approximately four feet by two and one-half feet, upon which were inscribed, verbatim, the words of the first amendment. Within a few minutes, a Supreme Court police officer approached Grace and instructed her to go across the street. The officer indicated in response to Grace's inquiry that the law, and more specifically 40 United States Code, required that she leave. After some further exchange of words the officer informed her that if she did not move she would have to come with him into the Supreme Court building. Fearing arrest, Grace left.

Plaintiff Thaddeus Zywicki entered upon the sidewalk in front of the Supreme Court in May, 1978, and began distributing to passersby leaflets which were reprints of a letter to the Editor of the *Washington Post* from a United States Senator concerning the subject of removal of unfit judges from the bench. Near Zywicki, and also on the Supreme Court grounds, was a coin-operated newsstand for the *Washington Star*. After Zywicki had distributed a few of these leaflets, a Supreme Court police officer approached him and stated that Title 40 of the United States Code prohibited the distribution of leaflets on Supreme Court grounds. Fearing arrest, Zywicki left.

On January 8, 1980, Zywicki returned to Supreme Court grounds to distribute pamphlets containing invitations to and information about several meetings and events termed "religious reflection[s] in solidarity with oppressed peoples of Central America," Guatemala, and Latin America. *See* Exhibit 2 to Complaint, filed May 13, 1980. Shortly after his arrival, however, Zywicki was approached by a Supreme Court police officer and informed that he was prohibited by law from distributing leaflets on Supreme Court grounds. When the officer, in response to Zywicki's inquiry, indicated that Zywicki would be arrested if he continued leafletting, Zywicki left.

On February 4, 1980, Zywicki again entered upon Supreme Court grounds and began distributing handbills allegedly concerning "political and human oppression in Guatemala." Complaint, filed May 13, 1980, at ¶ 16. Zywicki had been informed by counsel that a Superior Court judge had "narrowed the application" of 40 U.S.C. § 13k to prohibit only conduct engaged in "with the specific intent of influencing, impeding, or obstructing the administration of justice." *Id.* Shortly after Zywicki began distributing the handbills, however, he was once again instructed that he would be subject to arrest if he persisted. At the time of this warning, Zywicki and the officers involved were standing near a *Washington Post* vending machine. After protesting that newspapers were allowed to distribute printed matter on the grounds while he was denied that "right," Zywicki left.

Plaintiffs claim that they had no intention to interfere with the business of the Supreme Court or influence the Court with respect to any given case. Indeed, Ms. Grace acted because she was "alarmed that a statute could prohibit peaceful freedom of expression on the grounds of the Supreme Court." *Id.* at ¶ 9.

---

1. 40 U.S.C. § 13k provides that:

    It shall be unlawful to parade, stand, or move in processions or assemblages in the Supreme Court building or grounds, or to display therein any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement.

40 U.S.C. § 13*l* authorizes the Supreme Court Marshal to issue regulations for the "maintenance of suitable order and decorum within the Supreme Court Building and grounds."

Plaintiffs do not claim that they applied to the Supreme Court Marshal for any permit to engage in the conduct for which they seek judicial protection or sought any ruling from him before they physically appeared on the Supreme Court grounds. *Compare Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F.Supp. 575, 578 n.5 (D.D.C. 1972) (McGowan, J., for a three-judge court). On the other hand, 40 U.S.C. § 13*l* authorizes the Supreme Court Marshal to issue and publish regulations for the "maintenance of suitable order and decorum within the Supreme Court building and grounds." The only such regulation was published on November 26, 1975, to fix the hours during which the Supreme Court building is open to the public. The Marshal has, however, furnished an affidavit in these proceedings about his practice and that of his officers to advise any person carrying a sign, passing out leaflets or participating in a demonstration on the Supreme Court grounds to cease and leave the grounds or be arrested. The affidavit asserts that this is a uniform practice and that those who do not cease and leave are arrested. According to the affidavit, this practice is enforced uniformly without regard to the message of the expressive conduct. Affidavit of Alfred Wong, Marshal of the Supreme Court, May 27, 1980.

### B.

Plaintiffs contend that the statute's potential for improper application discourages exercise of first amendment freedoms and that it lends itself to discriminatory enforcement. Plaintiffs emphasize that, unlike the defendants in *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), who appeared 2,000 strong approximately 100 feet in front of a Louisiana courthouse, each of the two plaintiffs here sought to engage in "pure speech such as lone leafletting and lone signholding". Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment and In Opposition to Defendants' Motion for Summary Judgment, p. 3. Plaintiffs contend that where such first amendment rights are at stake "the burden is on the Government to demonstrate a legitimate and compelling Governmental interest in sustaining the statute on its face and as applied," and they urge this Court to "engage in a factored balancing analysis to evaluate whether a statute is susceptible to improper application and is necessary to accomplish a legitimate Government interest." *Id.* Such a process should, they contend, lead to the conclusion that the Government's interest in protecting the Supreme Court from outside influence does not justify interference with their peaceful, solitary and unobtrusive leafletting and sign carrying.

The District of Columbia Superior Court has exclusive jurisdiction over prosecutions under § 13k.[2] Plaintiffs point to a decision of that Court that § 13k by its terms reaches only persons who carry signs or distribute leaflets on the Supreme Court grounds "with the intent to disrupt, interfere with, or impede the administration of justice, or with the intent of influencing the administration of justice." *United States v. Ebner, et al.*, Docket No. 12487–79 (Hannon, J.) January 22, 1980. Plaintiffs represent that they did not intend to interfere with or disrupt the Supreme Court and therefore should be declared immune from arrest or threat of prosecution. Thus, plaintiffs urge, in effect, that even if the statute were itself valid, as written, it does not proscribe their leaflets and signs.

Defendants counter with reference to Supreme Court decisions sustaining the constitutionality of statutes which foreclose expressive conduct near a United States courthouse in aid of the "legitimate Government interest in protecting the judicial system from the pressures which picketing

---

**2.** 40 U.S.C. § 13m provides that:

Whoever violates any provisions of sections 13g–13k of this title, or of any regulation prescribed under section 131 of this title, shall be fined not more than $100 or imprisoned not more than sixty days, or both, prosecution for such offenses to be had in the municipal court for the District of Columbia, upon information by the United States Attorney or any of his assistants.

818

near a courthouse might create." [3] *Cox v. Louisiana*, 379 U.S. at 562, 85 S.Ct. at 479. Defendants also cite Justice Black's opinion in *Adderley v. Florida*, 385 U.S. 39, 47–48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966), rejecting "the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." Defendants emphasize the distinction drawn in *Jeannette Rankin Brigade, supra*, between the constitutional responsibility of the legislative branch to be responsive to public petition and opinion and the need of courts to act solely on formally filed pleadings and records as addressed in oral argument in the courtroom in a form prescribed by court rule and custom. Thus, pointing to this distinction, Judge McGowan's opinion suggests that "there are some areas [such as courthouses] in which the Government may absolutely prohibit the exercise of first amendment rights, especially the right to assemble." *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F.Supp. at 583. The Supreme Court site which defendants would insulate from leaflets and signs is, they point out, small and well defined by statute. Moreover, there are other areas nearby, on the Capitol grounds and elsewhere in and near the city, which are available by law for the kinds of expressive conduct for which plaintiffs seek special protection here. *See e. g., Quaker Action Group v. Morton*, 516 F.2d 717 (D.C.Cir. 1975) (*Quaker Action IV*); *Jeannette Rankin Brigade v. Chief of Capitol Police, supra*. Defendants urge that these factors considered together fully support their opposition to plaintiffs' motion.

### C.

On the merits, this case poses nice questions as to the scope and the statutory authority relied upon by Supreme Court officials to threaten the plaintiffs with arrest. Arguably, neither section 13k (nor 18 U.S.C. § 1507), by their terms, reach an individual carrying a message on a sign or in pamphlets or leaflets, unassisted by any other person and without apparent attempt to interfere with or influence the Supreme Court or its officials. Normally, if the Marshal adheres to his practice of arresting such persons on authority of 40 U.S.C. § 13k, the construction of the statute would be resolved in a criminal trial. The trial and appellate courts would construe the statute in the context of specific evidence about the expressive conduct, the intentions of those engaged in it, and the business of the Supreme Court at that time. Such a prosecution would of course be conducted in the shadow of the Superior Court ruling that the statute does not reach particular conduct on the Supreme Court grounds in the absence of proof that the conduct was intended to interfere with the Supreme Court itself.

To resolve these questions the defendants advocate a construction of the statute which would proscribe conduct like that engaged in by plaintiffs without regard to their intention. They construe the statute as barring any sign or leaflet on the Supreme Court grounds without regard to the purpose or effect of the sign or leaflet. They also construe the statute to bar the carrying of any sign or the distribution of any leaflet, irrespective of whether the carrying and distribution is the work of one person or many persons.

There is support for this construction in the representation by the Marshal as the person charged by Congress with administration of the statute that it has been his practice to enforce it against any person carrying a sign or passing out leaflets on the Supreme Court grounds. Such a construction would eliminate the practical and legal problems which would arise if the Marshal were required to determine in each

**3.** 18 U.S.C. § 1507 provides in relevant part that:

Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, ... or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the United States, ... shall be fined not more than $5,000 or imprisoned not more than one year, or both.

case the intention of each person engaged in expressive conduct at the Supreme Court or otherwise evaluate the content of that expression. The Court notes, without deciding, however, that 40 U.S.C. § 13*l* may contemplate that the Marshal's interpretations of this particular statute (40 U.S.C. § 13k such as those reflected in the Marshal's affidavit, should be recorded in regulations, approved by the Chief Justice, and published. The Marshal's failure to follow the procedure prescribed by § 13*l* would obviously complicate any effort by the Marshal to consummate his threat of arrest with a successful prosecution. *See e. g., United States v. Ebner, et al., supra.* More important here, this defect in the Marshal's execution of his statutory authority and the resulting risk that an arrest and prosecution might result in a dismissal or acquittal, could give color to plaintiffs' claim that the threat of arrest has the effect and purpose of an impermissible form of prior restraint.

### D.

■ From the foregoing, it seems apparent that plaintiffs have a first amendment claim which they could assert in defense of any prosecution. They may even have a first amendment claim for any damages caused them by an arrest or threat of arrest in violation of their first amendment rights. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). But, they do not raise the constitutional claim here either in defense of a criminal action or to vindicate damages already suffered. They invoke equity to protect themselves against the allegedly chilling effect of threatened arrest and prosecution. They seek a declaratory judgment and an injunction against the Supreme Court Marshal which would affect his discharge of his duties, not only with respect to these plaintiffs, but also in other unpredicted and unpredictable circumstances as well. A court has broad discretion to exercise or decline to exercise its power to enjoin public officials in the performance of their duties. The difficulty of anticipating the particular facts that might obtain in some future situation not now before the court and the relatively timeless nature of plaintiffs' claim militate against exercise of that discretion in favor of the plaintiffs here and now.

Plaintiffs appear not to have any interest in any case before the Supreme Court and do not seek an opportunity to express themselves about anything except their "alarm" that "a statute could prohibit peaceful freedom of expression on the grounds of the Supreme Court." Thus, their ultimate objective is not to express themselves about a cause or an idea. They engaged in expressive conduct and exposed themselves to the threat of arrest in order to precipitate litigation which would test the reach and the validity of the statute here challenged. They wisely prefer to assert their right and test the statute without further risking their liberty as by arrest, prosecution and possible confinement.

If there were no other way for the plaintiffs to raise the question they put, this court might have no alternative but to reach and resolve the substantial statutory and constitutional problems lurking here. The plaintiffs' interest in free expression near the Supreme Court and the Marshal's threat to arrest them for leafletting and carrying signs probably gives them standing and creates a genuine case or controversy as to the reach of the statute, and if it reaches plaintiffs, its validity. But an equity court need not resolve a case or controversy whenever and however it is presented. For example, when persons seeking equitable relief have failed to exhaust the administrative processes available to them and have a possibility of judicial review of an unfavorable administrative decision, courts generally withhold equitable relief until that administrative/judicial process has been exhausted. *E. g., Douglas v. Hampton,* 512 F.2d 976, 988–89 (D.C.Cir. 1975). That is the situation here. Plaintiffs have neither petitioned the Supreme Court Marshal to exercise his authority to issue regulations nor applied to him for a permit individually and peaceably to carry a

sign or pass leaflets at the Supreme Court at a particular time and place, for a particular purpose. *Compare Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F.Supp. at 578. At least until plaintiffs have sought relief from the Marshal, and he has denied it by action (or inaction), this suit should not be entertained.

Plaintiffs' obligation to pursue their administrative remedy is neither foreclosed nor rendered futile by the Marshal's affidavit in this case or by his broad construction of the statute described there. The affidavit does not purport to reflect exercise by the Marshal of his power to issue and publish regulations relating to order and decorum at the Supreme Court. The affidavit does not notify the public in the manner contemplated by § 13*l* of the Marshal's view of the reach of the statute.[4] Nor does the affidavit reflect consideration by the Marshal of a particular application to engage in particular expressive conduct at a particular place or time.

It may be that in the context of the decided cases the Marshal, in his discretion, would adopt regulations which do not categorically proscribe a single statement in a decorous sign of modest size and proportion by a lone individual when, for example, the Court is in recess. Or the Marshal may choose to publish a regulation or deny a permit application by plaintiffs in terms that would clarify the reach of the relevant statutes along the lines indicated in the Marshal's affidavit. There is potential merit in a regulation construing § 13k to draw sharp, clear lines which would narrow the Marshal's discretion to make judgments about the intention of leafletters and sign carriers or to attempt to distinguish between them on account of the content of the messages. In addition, accompanying

comment on a regulation or ruling might communicate to the plaintiffs and to the public an appreciation of the constitutional need to facilitate the ability of courts, and particularly the Supreme Court, "to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures." *See Cox v. Louisiana*, 379 U.S. at 583, 85 S.Ct. at 471 (Black, J., concurring).

This is not a case where time is of the essence of plaintiffs' first amendment claim. They make their first amendment claim for the limited purpose of defining (as distinguished from exercising) first amendment rights. This they are free to do by application to the Marshal without risk of arrest. Furthermore, they do not deny that in the interim they could freely express themselves publicly on any subject at many other nearby places. And, as a matter of fact, there is no prior restraint on plaintiffs' exercise of their claimed rights on the Supreme Court grounds, except their uncertainty as to whether such rights exist and the risk of arrest. Freedom from such uncertainty and risk is not necessarily and universally guaranteed by the constitution.

Until the plaintiffs have attempted and exhausted administrative application to the Supreme Court Marshal for a regulation or a permit, the threat of arrest is not an impermissible prior restraint on the plaintiffs' opportunity to test their right to engage in expressive conduct on the Supreme Court grounds. Therefore, they have not established a claim which justifies judicial intervention through the extraordinary processes of declaratory judgment and injunction.

Given this disposition of the matter, and pending application by the plaintiffs to the

---

4. The practice evidenced by the Marshal's affidavit is not the legal equivalent of the sheriff's "on-the-spot" ruling in *Cox v. Louisiana*, 379 U.S. at 568–70, 85 S.Ct. at 482–84. There the Supreme Court accepted the sheriff's informal delineation of a site about 100 feet away from a county courthouse as a binding determination of what was "near" the courthouse within the meaning of the governing state statute. *Compare* 18 U.S.C. § 1507. Proximity to the Su-

preme Court is not a problem here, however. 40 U.S.C. § 13p defines the Supreme Court site quite specifically for purposes of § 13k. Furthermore, each interpretation of § 13k is not only for the purpose of interpreting ambiguities in it; 40 U.S.C. § 13*l*, seems to anticipate that the Marshal write and publish such interpretation in a regulation, rather than rely on informal on-the-spot rulings or unpublished "practices" evidenced only by a litigation affidavit.

Marshal, it is unnecessary to consider the plaintiffs' claim of discriminatory enforcement because local newspapers are sold from vending machines on the Supreme Court grounds.