UNITED STATES ET AL. *v.* GRACE ET AL.

No. 81–1863.   Argued January 18, 1983—Decided April 20, 1983

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. MARSHALL, J., *post*, p. 184, and STEVENS, J., *post*, p. 188, filed opinions concurring in part and dissenting in part.

*Solicitor General Lee* argued the cause for appellants. With him on the briefs were *Assistant Attorney General McGrath, Deputy Solicitor General Geller, David A. Strauss, Anthony J. Steinmeyer,* and *Marc Richman.*

*Sebastian K. D. Graber* argued the cause for appellees. With him on the brief were *Norman A. Townsend* and *Bradley S. Stetler.**

JUSTICE WHITE delivered the opinion of the Court.

In this case we must determine whether 40 U. S. C. § 13k, which prohibits, among other things, the "display [of] any flag, banner, or device designed or adapted to bring into pub-

---

*\*A. Stephen Hut, Jr., Arthur B. Spitzer,* and *Charles S. Sims* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

*Robert L. Gnaizda* and *Sidney M. Wolinsky* filed a brief for the League of United Latin American Citizens as *amicus curiae.*

lic notice any party, organization, or movement"[1] in the United States Supreme Court building and on its grounds, violates the First Amendment.

## I

In May 1978 appellee Thaddeus Zywicki, standing on the sidewalk in front of the Supreme Court building, distributed leaflets to passersby. The leaflets were reprints of a letter to the editor of the Washington Post from a United States Senator concerning the removal of unfit judges from the bench. A Supreme Court police officer approached Zywicki and told him, accurately, that Title 40 of the United States Code prohibited the distribution of leaflets on the Supreme Court grounds, which includes the sidewalk. Zywicki left.

In January 1980 Zywicki again visited the sidewalk in front of the Court to distribute pamphlets containing information about forthcoming meetings and events concerning "the oppressed peoples of Central America." Zywicki again was approached by a Court police officer and was informed that the distribution of leaflets on the Court grounds was prohibited by law. The officer indicated that Zywicki would be arrested if the leafletting continued. Zywicki left.

Zywicki reappeared in February 1980 on the sidewalk in front of the Court and distributed handbills concerning oppression in Guatemala. Zywicki had consulted with an attorney concerning the legality of his activities and had been informed that the Superior Court for the District of Columbia had construed the statute that prohibited leafletting, 40 U. S. C. § 13k, to prohibit only conduct done with the specific intent to influence, impede, or obstruct the administration of

---

[1] The provision at issue in this case is part of a statutory scheme enacted in 1949 to govern the protection, care, and policing of the Supreme Court grounds. In its entirety § 13k provides:

"It shall be unlawful to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, or to display therein any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement." 63 Stat. 617.

justice.[2]   Zywicki again was told by a Court police officer that he would be subject to arrest if he persisted in his leafletting.   Zywicki complained that he was being denied a right that others were granted, referring to the newspaper vending machines located on the sidewalk.   Nonetheless, Zywicki left the grounds.

Around noon on March 17, 1980, appellee Mary Grace entered upon the sidewalk in front of the Court and began to display a four foot by two and a half foot sign on which was inscribed the verbatim text of the First Amendment.   A Court police officer approached Grace and informed her that she would have to go across the street if she wished to display the sign.   Grace was informed that Title 40 of the United States Code prohibited her conduct and that if she did not cease she would be arrested.   Grace left the grounds.

On May 13, 1980, Zywicki and Grace filed the present suit in the United States District Court for the District of Columbia.   They sought an injunction against continued enforcement of 40 U. S. C. § 13k and a declaratory judgment that the statute was unconstitutional on its face.   On August 7, 1980, the District Court dismissed the complaint for failure to exhaust administrative remedies.[3]   Appellees took an appeal, arguing that the District Court's action was improper and that the Court of Appeals should grant the relief requested in the complaint.

The Court of Appeals determined that the District Court's dismissal for failure to exhaust administrative remedies was erroneous and went on to strike down § 13k on its face as an unconstitutional restriction on First Amendment rights in a

---

[2] The case Zywicki's counsel referred to is *United States* v. *Ebner*, No. M–12487–79 (D. C. Super. Ct., Jan. 22, 1980).   The case is currently on appeal to the District of Columbia Court of Appeals; that court has postponed decision pending the outcome of the present appeal.

[3] *Grace* v. *Burger*, 524 F. Supp. 815 (1980).

public place.[4]  *Grace* v. *Burger*, 214 U. S. App. D. C. 375, 665 F. 2d 1193 (1981).

The Government appealed from the Court of Appeals' judgment.  We noted probable jurisdiction, 457 U. S. 1131 (1982).

## II

Section 13k prohibits two distinct activities: it is unlawful either "to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds," or "to display therein any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement."  Each appellee appeared individually on the public sidewalks to engage in expressive activity, and it goes without saying that the threat of arrest to which each appellee was subjected was for violating the prohibition against the display of a "banner or device."  Accordingly, our review is limited to the latter portion of the statute.[5]  Likewise, the controversy presented by appellees concerned their right to use the public sidewalks surrounding the Court building for the communicative activities they sought to carry out, and we shall address only whether the proscriptions of § 13k are constitutional as applied to the public sidewalks.

Our normal course is first to "ascertain whether a construction of the statute is fairly possible by which the [constitu-

---

[4] The court justified its action in this regard by relying primarily on the fact that the case presented a pure question of law that had been fully briefed and argued by the parties both in the District Court and in the Court of Appeals.  Because the appellants do not take issue with the propriety of the Court of Appeals' action in addressing the merits rather than remanding to the District Court, we will assume that such action was proper without deciding that question.  Cf. *Singleton* v. *Wulff*, 428 U. S. 106 (1976).

[5] Although the Court of Appeals opinion purports to hold § 13k unconstitutional on its face without any indication that the holding is limited to that portion of the statute that deals with the display of a "flag, banner, or device," the decision must be read as limited to that prohibition.

tional] question may be avoided." *Crowell* v. *Benson*, 285 U. S. 22, 62 (1932). See *New York* v. *Ferber*, 458 U. S. 747, 769, n. 24 (1982). Appellees did not make a statutory construction argument before the lower courts, but at oral argument, the question was raised whether § 13k reached the types of conduct in which appellees engaged, and we should answer it. We agree with the United States that the statute covers the particular conduct of Zywicki or Grace and that it is therefore proper to reach the constitutional question involved in this case.

The statutory ban is on the display of a "flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement." 40 U. S. C. § 13k. It is undisputed that Grace's picket sign containing the text of the First Amendment falls within the description of a "flag, banner, or device." Although it is less obvious, it is equally uncontested that Zywicki's leaflets fall within the proscription as well.

We also accept the Government's contention, not contested by appellees, that almost any sign or leaflet carrying a communication, including Grace's picket sign and Zywicki's leaflets, would be "designed or adapted to bring into public notice [a] party, organization or movement." Such a construction brings some certainty to the reach of the statute and hence avoids what might be other challenges to its validity.

### III

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ."[6] There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving "speech" protected by the First Amendment. *E. g.*, *Carey* v. *Brown*, 447

---

[6] The First Amendment provides in full:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

U. S. 455, 460 (1980); *Gregory* v. *Chicago*, 394 U. S. 111, 112 (1969); *Jamison* v. *Texas*, 318 U. S. 413 (1943); *Thornhill* v. *Alabama*, 310 U. S. 88 (1940); *Lovell* v. *Griffin*, 303 U. S. 444 (1938); *Schneider* v. *State*, 308 U. S. 147 (1939).

It is also true that "public places" historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be "public forums." See *Perry Education Assn.* v. *Perry Local Educators' Assn.*, 460 U. S. 37, 45 (1983); *Carey* v. *Brown, supra,* at 460; *Hudgens* v. *NLRB*, 424 U. S. 507, 515 (1976); *Cox* v. *New Hampshire*, 312 U. S. 569, 574 (1941); *Hague* v. *CIO*, 307 U. S. 496, 515 (1939). In such places, the government's ability to permissibly restrict expressive conduct is very limited: the government may enforce reasonable time, place, and manner regulations as long as the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Education Assn., supra,* at 45. See, *e. g., Heffron* v. *International Society for Krishna Consciousness, Inc.*, 452 U. S. 640, 647, 654 (1981); *Grayned* v. *City of Rockford*, 408 U. S. 104, 115 (1972); *Cox* v. *Louisiana*, 379 U. S. 559 (1965) *(Cox II)*. Additional restrictions such as an absolute prohibition on a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling governmental interest. See, *e. g., Perry Education Assn., supra,* at 46; *Widmar* v. *Vincent*, 454 U. S. 263 (1981).

Publicly owned or operated property does not become a "public forum" simply because members of the public are permitted to come and go at will. See *Greer* v. *Spock*, 424 U. S. 828, 836 (1976). Although whether the property has been "generally opened to the public" is a factor to consider in determining whether the government has opened its property to the use of the people for communicative purposes, it is not determinative of the question. We have regularly rejected the assertion that people who wish "to propagandize protests or views have a constitutional right to do so when-

ever and however and wherever they please." *Adderley* v. *Florida*, 385 U. S. 39, 47–48 (1966). See, *e. g.*, *Cox* v. *Louisiana*, 379 U. S. 536, 554–555 (1965) *(Cox I); Cox II, supra*, at 563–564. There is little doubt that in some circumstances the government may ban the entry on to public property that is not a "public forum" of all persons except those who have legitimate business on the premises. The government, "no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley* v. *Florida, supra*, at 47. See *Cox II, supra*, at 563–564.

## IV

It is argued that the Supreme Court building and grounds fit neatly within the description of nonpublic forum property. Although the property is publicly owned, it has not been traditionally held open for the use of the public for expressive activities. As *Greer* v. *Spock, supra*, teaches, the property is not transformed into "public forum" property merely because the public is permitted to freely enter and leave the grounds at practically all times and the public is admitted to the building during specified hours.[7] Under this view it would be necessary only to determine that the restrictions imposed by § 13k are reasonable in light of the use to which the building and grounds are dedicated and that there is no discrimination on the basis of content. We need not make that judgment at this time, however, because § 13k covers the public sidewalks as well as the building and grounds in-

---

[7] The limitation on the hours during which the public is permitted in the Supreme Court building is the only regulation promulgated under 40 U. S. C. § 13*l*. The regulation provides:

"The Supreme Court Building at 1 First Street, N. E., Washington, D. C. 20543, is open to the public Monday through Friday, from 9 a. m. to 4:30 p. m., except on Federal holidays. The building is closed at all other times, although persons having legitimate business may be admitted at other times when so authorized by responsible officials."

side the sidewalks.    As will become evident, we hold that § 13k may not be applied to the public sidewalks.

The prohibitions imposed by § 13k technically cover the entire grounds of the Supreme Court as defined in 40 U. S. C. § 13p.[8]    That section describes the Court grounds as extending to the curb of each of the four streets enclosing the block on which the building is located.    Included within this small geographical area, therefore, are not only the building, the plaza and surrounding promenade, lawn area, and steps, but also the sidewalks.    The sidewalks comprising the outer boundaries of the Court grounds are indistinguishable from any other sidewalks in Washington, D. C., and we can discern no reason why they should be treated any differently.[9] Sidewalks, of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property.    In this respect, the present case differs from *Greer* v. *Spock, supra.* In *Greer*, the streets and sidewalks at issue were located within an enclosed military reservation, Fort Dix, N. J., and were thus separated from the streets and sidewalks of any municipality.    That is not true of the sidewalks surrounding

---

[8] Section 13p provides:

"For the purposes of sections 13f to 13p of this title the Supreme Court grounds shall be held to extend to the line of the face of the east curb of First Street Northeast, between Maryland Avenue Northeast and East Capitol Street; to the line of the face of the south curb of Maryland Avenue Northeast, between First Street Northeast and Second Street Northeast; to the line of the face of the west curb of Second Street Northeast, between Maryland Avenue Northeast and East Capitol Street; and to the line of the face of the north curb of East Capitol Street between First Street Northeast and Second Street Northeast."

[9] Because the prohibitions of § 13k are expressly made applicable to the entire grounds under § 13p, the statute cannot be construed to exclude the sidewalks.    Thus we must consider Congress' extension of § 13k's prohibitions to the sidewalks to be a reasoned choice.

the Court. There is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave. In *United States Postal Service* v. *Greenburgh Civic Assns.*, 453 U. S. 114, 133 (1981), we stated that "Congress . . . may not by its own *ipse dixit* destroy the 'public forum' status of streets and parks which have historically been public forums . . . ." The inclusion of the public sidewalks within the scope of § 13k's prohibition, however, results in the destruction of public forum status that is at least presumptively impermissible. Traditional public forum property occupies a special position in terms of First Amendment protection and will not lose its historically recognized character for the reason that it abuts government property that has been dedicated to a use other than as a forum for public expression. Nor may the government transform the character of the property by the expedient of including it within the statutory definition of what might be considered a nonpublic forum parcel of property. The public sidewalks forming the perimeter of the Supreme Court grounds, in our view, are public forums and should be treated as such for First Amendment purposes.

## V

The Government submits that § 13k qualifies as a reasonable time, place, and manner restriction which may be imposed to restrict communicative activities on public forum property such as sidewalks. The argument is that the inquiry should not be confined to the Supreme Court grounds but should focus on "the vicinity of the Supreme Court" or "the public places of Washington, D. C." Brief for Appellants 16, n. 5. Viewed in this light, the Government contends that there are sufficient alternative areas within the relevant forum, such as the streets around the Court or the sidewalks across those streets to permit § 13k to be considered a reasonable "place" restriction having only a minimal

impact on expressive activity. We are convinced, however, that the section, which totally bans the specified communicative activity on the public sidewalks around the Court grounds,[10] cannot be justified as a reasonable place restriction primarily because it has an insufficient nexus with any of the public interests that may be thought to undergird § 13k. Our reasons for this conclusion will become apparent below, where we decide that § 13k, insofar as its prohibitions reach to the public sidewalks, is unconstitutional because it does not sufficiently serve those public interests that are urged as its justification.

Section 13k was part of an 11-section statute, enacted in 1949, "[r]elating to the policing of the building and grounds of the Supreme Court of the United States." 63 Stat. 616, 40 U. S. C. §§ 13f–13p. The occasion for its passage was the termination of the practice by District of Columbia authorities of appointing Supreme Court guards as special policemen for the District. This action left the Supreme Court police force without authority to make arrests and enforce the law in the building and on the grounds of the Court. The Act, which was soon forthcoming, was modeled on the legislation relating to the Capitol grounds, 60 Stat. 718, 40 U. S. C. §§ 193a–193m. It authorizes the appointment by the Marshal of special officers "for duty in connection with the policing of the Supreme Court Building and grounds and adjacent streets." Sections 2–6 of the Act prohibit certain kinds of

---

[10] Section 13k does not prohibit *all* expressive conduct: it does not, for example, purport to prohibit any oral expression, on any subject. It is unnecessary, however, to determine what conduct other than the picketing and leafletting at issue here may be fairly within the terms of the statute because the statute at least prohibits the conduct at issue here. We do note that the current Marshal of the Court has interpreted and applied the statute to prohibit picketing and leafletting, but not other expressive conduct. See *Grace v. Burger*, 214 U. S. App. D. C. 375, 378, n. 7, 665 F. 2d 1193, 1196, n. 7 (1981). Interpreted and applied as an absolute ban on these two types of expressive conduct, it is clear that the prohibition is facially content-neutral.

conduct in the building or grounds.    Section 6, codified as 40 U. S. C. § 13k, is at issue here.   Other sections authorize the Marshal to issue regulations, provide penalties for violations of the Act or regulations, and authorize the Court's special police to make arrests for violation of the Act's prohibitions or of any law of the United States occurring within the building and grounds and on the adjacent streets.    Section 11 of the Act, 13 U. S. C. § 13p, defines the limits of the Court's grounds as including the sidewalks surrounding the building.

Based on its provisions and legislative history, it is fair to say that the purpose of the Act was to provide for the protection of the building and grounds and of the persons and property therein, as well as the maintenance of proper order and decorum.    Section 6, 40 U. S. C. § 13k, was one of the provisions apparently designed for these purposes.    At least, no special reason was stated for its enactment.

We do not denigrate the necessity to protect persons and property or to maintain proper order and decorum within the Supreme Court grounds, but we do question whether a total ban on carrying a flag, banner, or device on the public sidewalks substantially serves these purposes.    There is no suggestion, for example, that appellees' activities in any way obstructed the sidewalks or access to the building, threatened injury to any person or property, or in any way interfered with the orderly administration of the building or other parts of the grounds.    As we have said, the building's perimeter sidewalks are indistinguishable from other public sidewalks in the city that are normally open to the conduct that is at issue here and that § 13k forbids.    A total ban on that conduct is no more necessary for the maintenance of peace and tranquility on the public sidewalks surrounding the building than on any other sidewalks in the city.    Accordingly, § 13k cannot be justified on this basis.

The United States offers another justification for § 13k that deserves our attention.    It is said that the federal courts represent an independent branch of the Government and that

their decisionmaking processes are different from those of the other branches. Court decisions are made on the record before them and in accordance with the applicable law. The views of the parties and of others are to be presented by briefs and oral argument. Courts are not subject to lobbying, judges do not entertain visitors in their chambers for the purpose of urging that cases be resolved one way or another, and they do not and should not respond to parades, picketing, or pressure groups. Neither, the Government urges, should it *appear* to the public that the Supreme Court is subject to outside influence or that picketing or marching, singly or in groups, is an acceptable or proper way of appealing to or influencing the Supreme Court. Hence, we are asked to hold that Congress was quite justified in preventing the conduct in dispute here from occurring on the sidewalks at the edge of the Court grounds.

As was the case with the maintenance of law and order on the Court grounds, we do not discount the importance of this proffered purpose for § 13k. But, again, we are unconvinced that the prohibitions of § 13k that are at issue here sufficiently serve that purpose to sustain its validity insofar as the public sidewalks on the perimeter of the grounds are concerned. Those sidewalks are used by the public like other public sidewalks. There is nothing to indicate to the public that these sidewalks are part of the Supreme Court grounds or are in any way different from other public sidewalks in the city. We seriously doubt that the public would draw a different inference from a lone picketer carrying a sign on the sidewalks around the building than it would from a similar picket on the sidewalks across the street.

We thus perceive insufficient justification for § 13k's prohibition of carrying signs, banners, or devices on the public sidewalks surrounding the building. We hold that under the First Amendment the section is unconstitutional as applied to those sidewalks. Of course, this is not to say that those sidewalks, like other sidewalks, are not subject to reasonable

time, place, and manner restrictions, either by statute or by regulations issued pursuant to 40 U. S. C. § 13*l*.

The judgment below is accordingly affirmed to the extent indicated by this opinion and is otherwise vacated.

*So ordered.*

JUSTICE MARSHALL, concurring in part and dissenting in part.

I would hold 40 U. S. C. § 13k unconstitutional on its face. The statute in no way distinguishes the sidewalks from the rest of the premises, and excising the sidewalks from its purview does not bring it into conformity with the First Amendment. Visitors to this Court do not lose their First Amendment rights at the edge of the sidewalks any more than "students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker* v. *Des Moines Independent Community School District*, 393 U. S. 503, 506 (1969). Since the continuing existence of the statute will inevitably have a chilling effect on freedom of expression, there is no virtue in deciding its constitutionality on a piecemeal basis.

When a citizen is "in a place where [he] has every right to be," *Brown* v. *Louisiana*, 383 U. S. 131, 142 (1966) (opinion of Fortas, J., joined by Warren, C. J., and Douglas, J.), he cannot be denied the opportunity to express his views simply because the Government has not chosen to designate the area as a forum for public discussion. While the right to conduct expressive activities in such areas as streets, parks, and sidewalks is reinforced by their traditional use for purposes of assembly, *Hague* v. *CIO*, 307 U. S. 496, 515 (1939) (opinion of Roberts, J., joined by Black, J.), that right ultimately rests on the principle that "one who is rightfully on a street which the state has left open to the public carries with him there *as elsewhere* the constitutional right to express his views in an orderly fashion." *Jamison* v. *Texas*, 318 U. S. 413, 416 (1943) (emphasis added). Every citizen lawfully present in a

public place has a right to engage in peaceable and orderly expression that is not incompatible with the primary activity of the place in question, whether that place is a school,[1] a library,[2] a private lunch counter,[3] the grounds of a statehouse,[4] the grounds of the United States Capitol,[5] a bus terminal,[6] an airport,[7] or a welfare center.[8]   As we stated in *Grayned* v. *City of Rockford*, 408 U. S. 104, 116 (1972), "[t]he crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time."   "[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider* v. *State*, 308 U. S. 147, 163 (1939).

I see no reason why the premises of this Court should be exempt from this basic principle.   It would be ironic indeed if an exception to the Constitution were to be recognized for the very institution that has the chief responsibility for protecting constitutional rights.   I would apply to the premises of this Court the same principle that this Court has applied to other public places.

Viewed in this light, 40 U. S. C. § 13k is plainly unconstitutional on its face.   The statute is not a reasonable regulation

---

[1] *Tinker* v. *Des Moines Independent Community School District*, 393 U. S. 503, 512–513 (1969).

[2] *Brown* v. *Louisiana*, 383 U. S. 131, 142 (1966); *id.*, at 146, and n. 5 (BRENNAN, J., concurring in judgment).

[3] *Garner* v. *Louisiana*, 368 U. S. 157, 201–202 (1961) (Harlan, J., concurring in judgment).

[4] *Edwards* v. *South Carolina*, 372 U. S. 229 (1963).

[5] *Jeannette Rankin Brigade* v. *Chief of Capitol Police*, 342 F. Supp. 575 (DC), summarily aff'd, 409 U. S. 972 (1972).

[6] *Wolin* v. *Port of New York Authority*, 392 F. 2d 83 (CA2), cert. denied, 393 U. S. 940 (1968).

[7] *Chicago Area Military Project* v. *City of Chicago*, 508 F. 2d 921 (CA7), cert. denied, 421 U. S. 992 (1975); *Kuszynski* v. *City of Oakland*, 479 F. 2d 1130 (CA9 1973).

[8] *Albany Welfare Rights Organization* v. *Wyman*, 493 F. 2d 1319 (CA2), cert. denied, 419 U. S. 838 (1974).

of time, place, and manner, cf., *e. g.*, *Kovacs* v. *Cooper*, 336 U. S. 77, 87–89 (1949); *Cox* v. *New Hampshire*, 312 U. S. 569, 575–576 (1941), for it applies at all times, covers the entire premises, and, as interpreted by the Court, proscribes even the handing out of a leaflet and, presumably, the wearing of a campaign button as well.[9]

Nor does the statute merely forbid conduct that is incompatible with the primary activity being carried out in this Court. Cf. *Grayned* v. *City of Rockford, supra*, at 116; *Greer* v. *Spock*, 424 U. S. 828, 843 (1976) (POWELL, J., concurring). In contrast to 18 U. S. C. § 1507 (1976 ed., Supp. V) and the statute upheld in *Cox* v. *Louisiana*, 379 U. S. 559 (1965),[10] 40 U. S. C. § 13k is not limited to expressive activities that are intended to interfere with, obstruct, or impede the administration of justice. In *Cox* the Court stressed that a prohibition of expression "unrelated to any judicial proceedings" would raise "entirely different considerations." 379 U. S., at 567. The statute at issue here is a far cry from

---

[9] Separate provisions of the United States Code also make it a crime to solicit contributions or give a speech on the premises. 40 U. S. C. §§ 13h and 13j.

[10] Title 18 U. S. C. § 1507 (1976 ed., Supp. V) provides in pertinent part:

"Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the United States, . . . or with such intent uses any sound-truck or similar device or resorts to any other demonstration in or near any such building . . . shall be fined not more than $5,000 or imprisoned for not more than one year, or both."

The Louisiana statute upheld on its face in *Cox* provided in pertinent part:

"Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty pickets or parades in or near a building housing a court of the State of Louisiana . . . shall be fined not more than five thousand dollars or imprisoned not more than one year, or both." La. Rev. Stat. § 14:401 (Supp. 1962).

both 18 U. S. C. § 1507 (1976 ed., Supp. V) and the statute upheld in *Cox*, for it imposes a blanket prohibition on the "display" of "*any* flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement." (Emphasis added.) The application of the statute does not depend upon whether the flag, banner, or device in any way concerns a case before this Court. So sweeping a prohibition is scarcely necessary to protect the operations of this Court, and in my view cannot constitutionally be applied either to the Court grounds or to the areas inside the Court building that are open to the public.

I would therefore hold the prohibition unconstitutional on its face.[11] We have repeatedly recognized that a statute which sweeps within its ambit a broad range of expression protected by the First Amendment should be struck down on its face.[12] "The existence of such a statute . . . results in a continuous and pervasive restraint on all freedom of discus-

---

[11] I agree with the Court that the clause of 40 U. S. C. § 13k prohibiting processions or assemblages is not before us, since neither of the appellees engaged in a procession or assemblage.

[12] *E. g., United States* v. *Robel*, 389 U. S. 258 (1967); *Keyishian* v. *Board of Regents*, 385 U. S. 589, 604, 609–610 (1967); *Elfbrandt* v. *Russell*, 384 U. S. 11, 19 (1966); *Dombrowski* v. *Pfister*, 380 U. S. 479, 486 (1965); *Thornhill* v. *Alabama*, 310 U. S. 88, 97–98 (1940); *Lovell* v. *Griffin*, 303 U. S. 444, 451 (1938).

Indeed, to protect third parties not before the Court, we have held that even "a litigant whose own activities are *unprotected* may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." *Schaumburg* v. *Citizens for a Better Environment*, 444 U. S. 620, 634 (1980) (emphasis added). *E. g., Erznoznik* v. *City of Jacksonville*, 422 U. S. 205 (1975); *Lewis* v. *City of New Orleans*, 415 U. S. 130 (1974); *Broadrick* v. *Oklahoma*, 413 U. S. 601 (1973); *Gooding* v. *Wilson*, 405 U. S. 518 (1972); *Kunz* v. *New York*, 340 U. S. 290 (1951); *NAACP* v. *Button*, 371 U. S. 415, 432–433 (1963). If such a showing is made, the statute will be struck down on its face.

An overbroad statute should likewise be struck down on its face where, as here, it is challenged by litigants whose own activities are constitutionally protected.

sion that might reasonably be regarded as within its purview." *Thornhill* v. *Alabama,* 310 U. S. 88, 97–98 (1940) (footnote omitted). As JUSTICE BRENNAN stated in his opinion for the Court in *NAACP* v. *Button,* 371 U. S. 415, 433 (1963), First Amendment freedoms "are delicate and vulnerable," and "[t]he threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." I would not leave visitors to this Court subject to the continuing threat of imprisonment[13] if they dare to exercise their First Amendment rights once inside the sidewalks.

JUSTICE STEVENS, concurring in part and dissenting in part.

On three occasions Zywicki distributed leaflets and handbills. I would not construe that activity as the "display" of any "flag, banner, or device." A typical passerby would not have learned Zywicki's message from the "display" of his literature. Only after the material left Zywicki's possession would his message have become intelligible.

On one occasion Grace carried a sign on which the text of the First Amendment was written. I agree that this was the "display" of a "device," but I do not agree that her device was "designed or adapted to bring into public notice any party, organization, or movement." A typical passerby could not, merely by observing her sign, confidently link her with any specific party, organization, or "movement" as that term was understood when this statute was drafted.*

I see no reason to stretch the language of the statute to encompass the activities of either Zywicki or Grace. As a matter of statutory interpretation, we should not infer that

---

[13] A person who violates the statute is subject to imprisonment for 60 days or a $100 fine, or both. 40 U. S. C. § 13m.

*"A course or series of actions and endeavours on the part of a body of persons, moving or tending more or less continuously towards some special end." 6 Oxford English Dictionary 729 (1933) ("movement," definition 6). See also Webster's International Dictionary 1604 (2d ed. 1934) ("movement," definition 4).

Congress intended to abridge free expression in circumstances not plainly covered by the language of the statute. As a matter of judicial restraint, we should avoid the unnecessary adjudication of constitutional questions.

Because neither of the appellees has violated the statute, I would affirm the judgment of the Court of Appeals to the extent that it requires that appellants be restrained from causing appellees' arrest for engaging in the activities disclosed by this record.