*694 In an action, inter alia, for injunctive relief and to recover damages for a violation of civil and constitutional rights pursuant to 42 USC § 1983, the intervenors-plaintiffs Jack Economou, Lynn Lipton, Jeanne B. Opdycke, and Noel Tepper appeal from an amended order of the Supreme Court, Dutchess County (Pagones, J.), dated December 10, 2008, which denied their motion for summary judgment declaring, inter alia, in effect, that the use of municipal funds, labor, and equipment to display the menorah owned by the plaintiffs Chabad of Mid-Hudson Valley and Jacob Borenstein on public property violates the Establishment Clause of the First Amendment to the United States Constitution, and, upon searching the record, awarded summary judgment in favor of the defendants dismissing the complaint insofar as asserted by them, and awarded summary judgment in favor of the plaintiffs Chabad of Mid-Hudson Valley and Jacob Borenstein and against the defendants on the cause of action asserted by those plaintiffs pursuant to 42 USC § 1983.
Ordered that the appeal from so much of the order as, upon searching the record, awarded summary judgment in favor of the plaintiffs Chabad of Mid-Hudson Valley and Jacob Borenstein and against the defendants on the cause of action asserted by those plaintiffs pursuant to 42 USC § 1983 is dismissed, without costs or disbursements, as the appellants are not aggrieved by that portion of the order appealed from (see CPLR 5511); and it is further,
Ordered that the order is modified, on the law, (1) by deleting the provision thereof, upon searching the record, awarding summary judgment in favor of the defendants dismissing the complaint insofar as asserted by the intervenors plaintiffs Jack Economou, Lynn Lipton, Jeanne B. Opdycke, and Noel Tepper, and (2) by deleting the provision thereof denying that branch of the motion of those intervenors plaintiffs which was, in effect, for summary judgment declaring that the use of municipal funds, labor, and equipment to display the plaintiffs’ menorah violates the Establishment Clause of the First Amendment to the United States Constitution, and substituting therefor a provision granting that branch of their motion to the extent of *695 prohibiting the use of municipal funds, labor, and equipment to assist in the nightly lighting of the menorah and otherwise denying that branch of the motion; as so modified, the order is affirmed insofar as reviewed, without costs or disbursements.
This action involves the holiday display of a privately owned, 18-foot tall menorah on public property, and the use of municipal funds, labor, and equipment to transport, erect, light, and dismantle the menorah.
The menorah is owned by the plaintiffs Chabad of Mid-Hudson Valley and Rabbi Jacob Borenstein (hereinafter together the plaintiffs). From 1986 to 1990, the menorah was displayed by the defendant City of Poughkeepsie on the grounds of its City Hall, along with a Christmas tree and a creche. In or about 1990, the City relocated the menorah and the Christmas tree to what was then the “Main Mall” at Market Street. In 1996, after Main Street was restored through the Main Mall area, the menorah was relocated to a public sidewalk at the northeast corner of Main and Market Streets (hereinafter the historical location), in front of a five-story commercial building known as the Barney Building in an area commonly known as Civic Center Plaza. Both the Barney Building and Civic Center Plaza are owned by Mark Pastreich.
In or about 2005, the City acquired, from Pastreich, a vacant lot which is adjacent to the Barney Building and located approximately 250 feet east of the historical location. Each year thereafter, the City erected a Christmas tree on the lot although, at some point, a live tree was planted.
For more than 13 years, from December to mid-January, an event known as the Celebration of Lights has taken place in the City’s downtown. Its primary purpose is to attract shoppers to the downtown area. Although the City does not sponsor the event, up to eight City employees work for approximately five weeks installing decorations that include approximately 1,000 feet of white lights along Main Street, Market Street, and North Clover Street, and placing approximately 100 to 150 wreaths on utility poles along portions of various City streets, including Main Street. The City employees also install garland and banners, and adorn two Christmas trees, one located on the public lot on Main Street and the other in Donegan Square Park. The celebration begins with a parade, which passes through the City’s downtown area and is highlighted by the lighting of the two Christmas trees.
The plaintiffs commenced this action after receiving notice in November 2007 that the City was essentially restricting the display of the menorah to the public lot on Main Street. The *696 complaint alleged that the City’s conduct violated the Establishment Clause of the First Amendment to the United States Constitution and gave rise to a cause of action under 42 USC § 1983. The plaintiffs sought and were granted a preliminary injunction for the 2007 winter holiday season, which directed the City to erect the menorah at the historical location.
In July 2008 the Supreme Court granted the motion of Jack Economou, Lynn Lipton, Jeanne B. Opdycke, and Noel Tepper (hereinafter collectively the intervenors) for leave to intervene as plaintiffs. In their amended complaint, the intervenors alleged that the use of public property and the use of public employees and taxpayer money to display the menorah violated the Establishment Clause.
Following discovery, the intervenors moved for summary judgment dismissing the plaintiffs’ complaint and for a judgment declaring unconstitutional “the solitary display of a religious symbol, a Menorah, on public property” and “the use of [C]ity men and equipment in support of the religious display.” The intervenors argued that no other religious display existed at the subject site and that the only other display within a 50-foot radius consisted of strings of lights and wreaths hanging from light poles, which decorations, they maintained, did not have any religious significance. .
In connection with that branch of the intervenors’ motion which was for summary judgment dismissing the causes of action in the plaintiffs’ complaint seeking damages and injunctive relief, the City submitted, inter alia, the affidavit of the defendant Mayor John Tkazyik, who stated that the City had recently enacted an executive policy that addressed secular and religious displays on public property. The policy provided that the public lot on Main Street would be the exclusive site of such displays for the 2008 winter holiday season.
In the amended order appealed from, the Supreme Court denied the intervenors’ motion, and upon searching the record, awarded the City summary judgment against the intervenors. The Supreme Court rejected the intervenors’ contention that the menorah “stands alone,” finding instead that the menorah is an “integral part of the City’s secular celebration which includes a Christmas tree on the same block.” It further found that the expenditure of City funds, labor, and equipment to light the menorah each night did not foster an excessive entanglement with religion.
Upon searching the record further, the Supreme Court also awarded the plaintiffs summary judgment against the defendants on the cause of action pursuant to 42 USC § 1983. As relief, *697 the Supreme Court directed the plaintiffs and the City to appear for a conference to assist in the development of a uniform policy with respect to holiday displays that would be consistent with legal precedent.
The intervenors’ appeal from so much of the order as, upon searching the record, awarded the plaintiffs summary judgment against the defendants on the cause of action pursuant to 42 USC § 1983, must be dismissed. In awarding summary judgment against the defendants on that cause of action, the Supreme Court did not award the plaintiffs monetary damages. Rather, it merely directed the plaintiffs and the City to appear for a conference to assist in the development of a uniform policy with respect to holiday displays that would be consistent with legal precedent. Since the intervenors, who are City residents, homeowners, and taxpayers, are not aggrieved by the Supreme Court’s direction of a settlement conference, their appeal from that portion of the order must be dismissed (see CPLR 5511; Pennsylvania Gen. Ins. Co. v Austin Powder Co., 68 NY2d 465, 472-473 [1986]).
Turning to the merits, we reject the intervenors’ contention that the display of the menorah on public property amounts to an endorsement of religion (see Lemon v Kurtzman, 403 US 602, 612-613 [1971]; New York State School Bds. Assn. v Sobol, 79 NY2d 333, 338 [1992], cert denied 506 US 909 [1992]).
“Context determines whether particular governmental action is likely to be perceived as an endorsement of religion” (New York State School Bds. Assn. v Sobol, 79 NY2d at 339; see County of Allegheny v American Civil Liberties Union, Greater Pittsburgh Chapter, 492 US 573, 595-597 [1989]; Elewski v City of Syracuse, 123 F3d 51, 53-54 [1997], cert denied 523 US 1004 [1998]). “When applied to holiday display challenges, this analysis is ‘highly fact-specific,’ asking: ‘Would a reasonable observer of the display in its particular context perceive a message of governmental endorsement or sponsorship of religion?’ ” (Skoros v City of New York, 437 F3d 1, 29 [2006], cert denied 549 US 1205 [2007], quoting Elewski v City of Syracuse, 123 F3d at 53; see County of Allegheny v American Civil Liberties Union, Greater Pittsburgh Chapter, 492 US at 593-594, 599-600).
Here, the public property at issue in the historical location is a public sidewalk at a prominent intersection in the City’s downtown. While a sidewalk is a public forum (see United States v Grace, 461 US 171, 177 [1983]), all public properties are not alike (see Flamer v City of White Plains, N.Y., 841 F Supp 1365, 1376 [1993]). In this case, the sidewalk is in front of the privately-owned Barney Building and very near the privately *698 owned Civic Center Plaza, facts which distinguish this case from those where the challenged display was on or near the grounds of a government building (see e.g. County of Allegheny v American Civil Liberties Union, Greater Pittsburgh Chapter, 492 US 573 [1989] [creche on grand staircase of county courthouse; Christmas tree next to menorah at entrance of government building]; Capitol Square Review & Advisory Bd. v Pinette, 515 US 753 [1995] [cross on Capitol Square, a state-owned plaza]; Kaplan v City of Burlington, 891 F2d 1024 [1989], cert denied 496 US 926 [1990] [menorah in City Hall Park]). Additionally, while the menorah is of considerable height, 18 feet, it is set against the “neutralizing[ ] secular background” (Ritell v Village of Briarcliff Manor, 466 F Supp 2d 514, 525 [2006]), of the five-story, commercial, and privately owned Barney Building.
Further, in the immediate vicinity of the menorah, as well as throughout the downtown area, are garlands, wreaths, and white lights, which, like the Christmas trees, “typify the secular celebration of Christmas” (County of Allegheny v American Civil Liberties Union, Greater Pittsburgh Chapter, 492 US at 616). These nearby secular decorations serve to emphasize the cultural message of Chanukah as represented by the menorah (see County of Allegheny v American Civil Liberties Union, Greater Pittsburgh Chapter, 492 US at 585-587). Moreover, “the theme of light [is] common to both Chanukah and Christmas as winter festivals” (County of Allegheny v American Civil Liberties Union, Greater Pittsburgh Chapter, 492 US at 619). The relevant context also includes the symbols in the public lot on Main Street, located 250 feet east of the historical location (see Elewski v City of Syracuse, 123 F3d at 54), which, for the 2007 winter holiday season, included not only a Christmas tree but a display of the Muslim faith in the form of a star and crescent. Therefore, while the menorah does not lose its religious symbolism, its surroundings negate any appearance of government endorsement (see Lynch v Donnelly, 465 US 668, 680-681 [1984]; cf. American Civ. Liberties Union of N.J. v Schundler, 104 F3d 1435, 1446 [1997], cert denied 520 US 1265 [1997]).
Thus, under all the relevant facts, the message conveyed to a reasonable observer of the menorah’s display at the historical location would be fairly understood as “a celebration of the diversity of the holiday season, including traditional religious and secular symbols of that season, and that a principal purpose of that celebration was to preserve the economic viability of downtown retailers” (Elewski v City of Syracuse, 123 F3d at 55).
*699 However, allowing the plaintiffs to use municipal funds, labor, and equipment for the nightly menorah lighting, even if the plaintiffs repaid the City for such labor and equipment, as required under the stipulation, would foster the perception of an unconstitutional excessive governmental entanglement with religion (see Walz v Tax Comm’n of City of New York, 397 US 664, 674 [1970]; Citizens Concerned for Separation of Church & State v City & County of Denver, 481 F Supp 522, 530 [1979], cert denied 452 US 963 [1981]; cf. American Civ. Liberties Union v. City of Birmingham, 791 F2d 1561, 1565-1566 [1986], cert denied 479 US 939 [1986]; Ritell v Village of Briarcliff Manor, 466 F Supp 2d at 526; see also County of Allegheny v American Civil Liberties Union, Greater Pittsburgh Chapter, 492 US at 616 [“(t)he Christmas tree, unlike the menorah, is not itself a religious symbol”]). Accordingly, the Supreme Court should have granted that branch of the intervenors’ motion which was for summary judgment declaring that the use of municipal funds, labor, and equipment to display the plaintiffs’ menorah violates the Establishment Clause of the First Amendment to the extent of prohibiting the use of municipal funds, labor, and equipment to assist in the nightly lighting of the menorah.
The intervenors’ remaining contentions are without merit. Fisher, J.P., Angiolillo, Belen and Lott, JJ., concur.