James P. SCIARRINO, an individual d/b/a Clancy's Gourmet Pizza; and Wade Ferrel, an individual, Plaintiffs,

v.

CITY OF KEY WEST, a Florida municipal corporation, Defendant.

No. 93–10031–CIV.

United States District Court, S.D. Florida.

Oct. 27, 1994.

Michael Barnes, Key West, FL, Richard Wilson, Orlando, FL, for plaintiffs.

Michael Burke, Ft. Lauderdale, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES LAWRENCE KING, District Judge.

#### I. Findings of Fact

In response to various complaints by pedestrians and property owners, the City of Key West (the "City") sought to limit the use of "barkers" who solicited customers for business purposes along various streets and beaches in Key West's Historic District. Businesses such as restaurants and time-share apartments hired barkers to approach pedestrians, engage in face-to-face advertising, distribute printed advertising materials and solicit customers for area businesses. The activities of barkers are referred to as "off-premises canvassing" ("OPC").

In response to complaints received regarding the activities of the barkers, the City conducted a workshop meeting on November 12, 1991 to discuss the problems caused by OPC activity. The City drafted a proposed ordinance and held public hearings regarding the proposed ordinance on March 3, 1992 and March 17, 1992. During these public hearings, numerous proponents of the ordinance described the problems caused by OPC activity in the historic district. These problems included: sidewalk congestion, invasion of pedestrian privacy, litter, impact on businesses proximate to where the OPC activity occurred and damage to the tourist-friendly atmosphere that Key West attempts to cultivate. At the conclusion of the March 17, 1992 meeting, the Key West City Commission adopted Ordinance No. 92–12 and created Sections 94.01–10 of the Key West Code of Ordinances (the "Ordinance").

The Ordinance prohibits OPC activity on publicly-owned parking lots, beaches and Mallory Dock. It also imposes limitations on OPC activity on Duval Street, Front Street, Clinton Square, and parts of Simonton and Whitehead Streets. The Ordinance does not completely ban OPC activity, but rather limits the location of OPC activity and the number of off-premises canvassers per business.

The Ordinance also establishes a permitting system for persons who seek to engage in OPC activity on publicly-owned land. Each off-premises canvasser must submit an application containing his or her name, date of birth, business represented and business address and telephone number. Proof of citizenship or an applicable work permit is also required.

After promulgation of the Ordinance, the City noticed a decrease in the amount of litter created by discarded advertising materials. The City also received fewer complaints regarding unwanted solicitation and sidewalk congestion. However, the Ordinance has not solved all the problems that the Ordinance was designed to remedy.

Plaintiff[1] James P. Sciarrino ("Sciarrino") owns and operates a restaurant under the trade name "Clancy's Gourmet Pizza." The restaurant is located on Charles Street, one of several side streets which are perpendicular to heavily travelled Duval Street. Prior to the enactment of the Ordinance, Plaintiff relied heavily on OPC activity on Duval Street to solicit customers for his restaurant. Subsequent to the adoption of the Ordinance, Sciarrino employed and/or contracted with persons who engaged in OPC activity on behalf of Clancy's Gourmet Pizza.

---

1. The Court finds that Plaintiff Wade Ferrel, who leases the property to Plaintiff Sciarrino and who does not employ off-premises canvassers, lacks standing to challenge the Ordinance.

**1020**

## II. Conclusions of Law

### A. First Amendment Challenge

 It is axiomatic that the public streets are a quintessential public forum. *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983) (" '[P]ublic places' historically associated with the free exercise of expressive activities, such as streets, sidewalks and parks, are considered, without more, to be 'public forums.' "). The Ordinance, which applies to certain speech on the public streets, restricts commercial speech,[2] which is speech that proposes a commercial transaction. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Commercial speech has traditionally been given less protection under the First Amendment than non-commercial or "pure" speech. *Id.* (commercial speech entitled to First Amendment protection); *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (commercial speech afforded less protection under First Amendment than non-commercial speech).

### *Central Hudson Gas* Analysis

 The Supreme Court in *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), set forth a four-part test to determine if a restriction on commercial speech is constitutionally valid. The four prongs are as follows: (1) the speech must be truthful and concern lawful activity; (2) the government must have a substantial interest

in restricting the speech; (3) the regulation must directly advance the asserted governmental interest and (4) the regulation must be narrowly tailored to serve the governmental purpose.[3]

### 1. Is the speech truthful and does it concern lawful activity?

In order to receive First Amendment protection, commercial speech must be truthful and must relate to lawful activity. Neither party contests the fact that the speech in issue is truthful and relates to lawful activity. Therefore, the Court finds that the speech regulated by the Ordinance is protected commercial speech.

### 2. Is there a substantial governmental interest in restricting the speech?

Defendant contends that three substantial governmental interests[4] exist for regulating commercial speech though the Ordinance. First, the City argues that off-premises canvassers harass tourists and pedestrians walking along the streets and beaches of the Historic District and invade pedestrian privacy. The City contends that prevention of this invasion of privacy is a substantial governmental interest. *See Hays County Guardian v. Supple,* 969 F.2d 111, 119 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1067, 122 L.Ed.2d 371 (1993) (although finding a university's restriction on distribution of newspapers unconstitutional, the Court found that the university had a legitimate interest in preventing invasion of privacy). Plaintiff contests this interest and

---

2. Plaintiff contends that the Ordinance covers commercial and non-commercial speech. The Court finds that this argument is without merit because the terms of the ordinance restrict only OPC activity and off-premises canvassing is defined as "distribution of information or solicitation of customers on a street, sidewalk, or other publicly owned right-of-way in connection with a business." Key West, Fla.Code of Ordinances § 94.02.

3. The Supreme Court modified the fourth prong of the *Central Hudson* analysis in *Board of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469, 478, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989), so that the inquiry is whether the restriction is narrowly tailored to serve the governmen-

tal interest. Previously, the fourth prong inquired whether the means were no more restrictive than necessary.

4. The City also proffered a fourth reason for the Ordinance—the preservation of the aesthetics and tourist-friendly atmosphere of the Historic District. This interest derives from the City's analogy of off-premises canvassers to "human signs" and the First Amendment jurisprudence regarding sign ordinances. However, the Court does not find this to be an apt analogy and therefore finds that aesthetic concern is not a substantial governmental interest advanced by the Ordinance. Additionally, a "tourist-friendly" atmosphere is too amorphous a concept to constitute a *substantial* governmental interest.

claims that protection of pedestrian privacy is not a substantial governmental interest. The Court finds that protection of pedestrian privacy is a substantial governmental interest. "Even solicitation that is neither fraudulent nor deceptive may be pressed with such frequency or vehemence as to intimidate, vex, or harass the recipient." *Edenfield v. Fane,* —— U.S. ——, ——, 113 S.Ct. 1792, 1799, 123 L.Ed.2d 543 (1993) *(citing Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 462, 98 S.Ct. 1912, 1921, 56 L.Ed.2d 444 (1978) for the proposition that protection of privacy is a legitimate state interest).

The second asserted governmental interest is reduction of sidewalk congestion. The areas of Key West that are subject to the Ordinance experience heavy pedestrian and automobile traffic. Plaintiff concedes that this is a substantial governmental interest.

The third governmental interest asserted is reduction in litter. The City argues that many pedestrians discard OPC materials soon after receiving them and that the City has an interest in reducing this type of litter. Plaintiff concedes that this is a substantial governmental interest.

Thus, the Court finds that the City has a substantial governmental interest in protecting pedestrian privacy, reducing congestion and preventing litter.

### 3. Does the regulation directly advance the asserted governmental interests?

The Ordinance does not completely proscribe OPC activity. Rather, it limits the number of canvassers, restricts the location of the canvassing, and requires permits for off-premises canvassers. As such, it does not completely eliminate the problems that the Ordinance seeks to solve. However, the Ordinance does not need to completely solve the problems, it must merely directly advance the governmental interest. "The City may 'directly advance' its interest by pursuing a partial solution to its problems, a proposition confirmed by the Supreme Court in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981)." *Supersign of Boca Raton, Inc. v. City of Fort Lauderdale,* 766 F.2d 1528, 1531 (11th Cir. 1985).

By restricting OPC activity through the Ordinance, the City advances its goal of protecting pedestrian privacy by limiting the harassing conduct of the off-premises canvassers. This conclusion is buttressed by a decrease in the number of complaints regarding OPC activity.

The Ordinance also directly advances the City's second goal of reducing congestion in the City's Historic District. Plaintiff argues that the City streets are always congested due to heavy tourist flow and street performers, who cause tourists to stop and gather around to watch their performances. Plaintiff is correct that congestion continues to be a problem for Key West and that the Ordinance does not significantly reduce this problem. However, the Ordinance removes OPC activity from the most congested thoroughfares in the Historic District, thereby providing a tangible, if modest, reduction in sidewalk congestion.

Although the Key West Historic District is a heavily trafficked area which is subject to litter problems, Felix Cooper, the Key West City Manager, testified that the OPC activity contributed to this litter problem and that the Ordinance reduced the litter caused by OPC activity.

In sum, the Ordinance directly advances all three of the City's asserted interests.

### 4. Is the regulation narrowly tailored to serve the governmental purpose?

The fourth prong of the *Central Hudson* analysis focuses on the "fit" between the regulation and the substantial governmental interests. Plaintiff relies on *City of Cincinnati v. Discovery Network, Inc.,* —— U.S. ——, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) for the proposition that the Ordinance is not narrowly tailored to serve the governmental interests asserted. In *Discovery Network,* the Supreme Court found that Cincinnati's complete ban on commercial newsracks was unconstitutional where Cincinnati did not prohibit non-commercial newsracks and where the regulation did not directly advance the governmental interest underlying the regulation. The Court found that while aesthetics and safety were legitimate inter-

ests, a regulation banning sixty-two commercial newsracks while allowing 1500–2000 non-commercial newsracks violated the First Amendment. Cincinnati's distinction between commercial and non-commercial speech lacked a close relationship to the governmental interests. *Discovery Network,* —— U.S. at ——, 113 S.Ct. at 1514. This was especially problematic where non-commercial speech, which the regulation did not restrict, caused the vast majority of the safety and aesthetic impairment.

Unlike the Cincinnati regulation, the Ordinance is not a "categorical ban" on OPC activity. The Ordinance simply limits the number of off-premises canvassers per business and the location of OPC activity. Were Key West to completely prohibit OPC activity throughout the entire city, such a ban would be impermissible. However, the modest restrictions imposed by the Ordinance do not run afoul of the First Amendment. Moreover, while the Cincinnati ordinance did not promote improved aesthetics or safety, the Ordinance does protect pedestrian privacy and, to a lesser degree, reduce litter and congestion.

A tenuous fit existed between the Cincinnati regulation and the asserted interests where the City restricted only commercial speech, despite the fact that non-commercial speech caused the bulk of the problem. In contrast, the opposite is true in Key West. Commercial OPC activity causes the harms that the Ordinance is designed to remedy. Non-commercial handbilling in Key West is not a significant cause of congestion, invasion of pedestrian privacy or litter. Finally, the *Discovery Network* Court made clear that

the "holding, however, is narrow. As should be clear from the above discussion, we do not reach the question whether, given certain facts and under certain circumstances, a community might be able to justify differential treatment of commercial and noncommercial newsracks." *Id.* at ——, 113 S.Ct. at 1516.

Thus, the Ordinance satisfies all four prongs of the *Central Hudson Gas* analysis and does not violate the First Amendment of the United States Constitution.

### B. Florida Statute § 166.0443

▉▉ Having found that the Ordinance is valid under the First Amendment, the Court now examines the Ordinance's validity under Florida Statute § 166.0443[5] (the "Statute"). Plaintiff contends that the Statute invalidates the Ordinance. Specifically, Florida Statute § 166.0443 prohibits municipalities from enacting any ordinance that requires the "registration or background screening of any individual engaged in or applying for a specific type or category of *employment* in the county or municipality or requires the carrying of an identification card issued as a result of such registration or screening ..." (emphasis added). Plaintiff asserts that the Ordinance's permit provisions violate the Statute by requiring registration or background screening in connection with employment as an off-premises canvasser. However, the Statute does not invalidate the Ordinance because it does not require the registration or background screening of individuals who wish to obtain employment as an off-premises canvasser. Under the Ordinance, only

---

5. Florida Statutes § 166.0443 provides, in full:

(1) Except as authorized by law, no county or municipality shall enact or enforce any ordinance, resolution, rule, regulation, policy, or other action which requires the registration or background screening of any individual engaged in or applying for a specific type or category of employment in the county or municipality or requires the carrying of an identification card issued as a result of such registration or screening, whether or not such requirement is based upon the residency of the person. However, an ordinance that regulates any business, institution, association, profession, or occupation by requiring background screening, which may include proof of certain

skills, knowledge, or moral character, is not prohibited by this section, provided that such regulation:

(a) Is not preempted to the state or is not otherwise prohibited by law;

(b) Is a valid exercise of the police power;

(c) Is narrowly designed to offer the protection sought by the county or municipality; and

(d) Does not unfairly discriminate against any class of individuals.

(2) This section shall not be construed to prohibit any employer, including a local government, from investigating the background of employees or prospective employees or from requiring employees to carry an identification card or registration card.

persons who seek to conduct commercial advertising or solicitation in certain areas of the Key West Historic District must obtain permits. An off-premises canvasser may work without a permit in any area of Key West unregulated by the Ordinance. The OPC Ordinance thus focuses on the *activity* and location of off-premises canvassers rather than on their employment.

■ Assuming arguendo that the Ordinance violates the main section of the Statute, the Ordinance is a valid regulation under the "savings" clause of § 166.0443. This clause exempts ordinances that would otherwise violate the terms of the Statute if the regulation (a) is not preempted to the state or prohibited by law; (b) is a valid exercise of police power; (c) is narrowly tailored to serve the protection sought and (d) does not unfairly discriminate against any class of individuals. The Court finds that the Ordinance meets the requirements of this savings clause and thus does not violate Florida Statute § 166.0443.

### III. Conclusion

Accordingly, after a careful review of the record, and the Court being fully advised, it is

ORDERED and ADJUDGED that final judgment be, and the same is hereby, entered in favor of Defendant. The validly enacted Ordinance does not violate the First Amendment or Florida Statute § 166.0443. Therefore, Plaintiff's request for injunctive relief, declaratory relief and damages is denied. The City may enforce the Ordinance. Defendant is hereby ordered to submit a proposed final judgment to the Court within ten (10) days.

DONE and ORDERED.