The Honorable Paul Miller State Senator Post Office Box 488 Melbourne, Arkansas 72556-0488
Dear Senator Miller:
I am writing in response to your request, on behalf of a constituent, for an opinion on whether signatures for a local option "wet/dry" petition may be collected "at the Sharp County Court House — inside the building and/or outside on county property."
RESPONSE
As an initial matter, I must note that by statute I am prohibited from the private practice of law, and thus cannot offer legal advice to private parties who are pursuing local option drives. I can, however, summarize the provisions of some previously-issued Attorney General opinions discussing similar issues. I will also assume for purposes of your question, that the person soliciting signatures is not a public servant soliciting signatures in a public office, and that the signature collecting does not occur during early voting at the courthouse, or on election day if the courthouse is a polling place. Each of these actions is subject to specific statutory prohibitions.[1] Other than these particular statutory prohibitions, I have *Page 2 
not found any general state statute addressing the issue.[2] The legality of collecting signatures on the property you describe may thus depend upon whether there is any local ordinance or policy prohibiting it. I have not been provided any information in this regard. As a consequence, I cannot review the legality or constitutionality of any such local measure. If there is a local ordinance or policy prohibiting the collecting of signatures in the areas you mention, it must pass scrutiny under the First Amendment of the United States Constitution. The constitutionality of any such local measure may depend, in that instance, on whether the particular areas in or surrounding the courthouse are, or have been designated as "public forums" for purposes of First Amendment analysis under the United States Constitution.
As stated by one of my predecessors in Op. Att'y Gen. 91-307, relying on Op. Att'y Gen. 90-221, " . . . the collecting of signatures on petitions is a form of speech which is protected under the First
Amendment. See United States v. Cruikshank, 92 U.S. 542 (1875)." First
Amendment analysis would thus be applicable to analyze the constitutionality of a prohibitory local ordinance or policy.
As stated in Sammartano v. First Judicial Circuit Court, 303 F.3d 959
(9th Cir. 2002), "In assessing a First Amendment claim relating to speech on government property, the first step is to `identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic.' Cornelius v. NAACPLegal Defense Educ. Fund, 473 U.S. 788, 797, 105 S.Ct. 3439,87 L.Ed.2d 567 (1985); see also Hopper v. City of Pasco, 241 F.3d 1067,1074 (9th Cir.2001)."
 As stated in Op. Att'y Gen. 91-307: *Page 3 
 The guide to determining whether a particular place is a public forum is set out in Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37 (1983), the holding of which has been summarized as follows:
 Government-owned property has been divided into three categories for purposes of forum analysis: (1) traditional public forums, which `by long tradition or by government fiat have been devoted to assembly and debate,' [Perry, supra] including such areas as public streets, parks and sidewalks; (2) public forums by government designation that are state-created and opened for limited public use, for example, university meeting facilities and municipal theaters; and (3) nonpublic forums which, by tradition or design, are not appropriate platforms for unrestrained communication — military installations and federal workplaces, for instance, fall into this category. [Emphasis original.]
 Paulsen v. County of Nassau, 925 F.2d 65, 68-69
(2nd Cir. 1991).
 In the first category, traditional public forums, the government may only regulate with content-neutral time, place and manner restrictions which are narrowly tailored to serve a significant governmental interest, and which leave open alternate channels of communication. United States v. Grace, 461 U.S. 171
(1983), citing Perry, supra. In rare instances, narrowly drawn content-based exclusions that are necessary to serve a compelling state interest are acceptable. Paulsey, supra at 69 (citing Frisby v. Schultz, 487 U.S. 474 (1988)). The same is true of public forums by government designation, where the state may limit access to certain speakers or subjects only if evenly applied to all similarly situated parties. Id. at 69, citing Perry, supra. In the third category, nonpublic forums, the state has maximum control over exercises of free speech rights. It is sufficient in these instances if rules and regulations reflect a legitimate government concern and do not suppress expression merely because public officials oppose the speaker's view. Id. at 69. *Page 4 
 It has been held that the "primary factor in determining whether property owned or controlled by the government is a public forum is how the locale is used." International Society for Krishna Consciousness, Inc. v. New Jersey Sports and Exposition Authority, 691 F.2d 155, 160 (3rd Cir. 1982). This consideration is responsible for the factual nature of your inquiry.
Op. Att'y Gen. 91-307 at 2-3.
In Op. Att'y Gen. 90-221, the Attorney General likewise noted that the question of whether particular places where signatures might be collected are "public forums" is a question of fact, and that he thus could not offer a conclusive determination as to whether the places [inquired about in that opinion] [we]re indeed "public forums. . . ." Id. at 4.
Similarly, I cannot provide a conclusive opinion regarding the areas in or around a county courthouse. The status of such places will in all likelihood depend upon factors surrounding their use. With regard specifically to soliciting signatures inside county offices, such as inside a county courthouse, my predecessor stated the following:
 You next inquire as to whether "public areas surrounding and within buildings owned, leased, or occupied by the state, county, municipal or quasi-governmental agencies" are public forums. Again, this question will depend upon the facts surrounding each such area. The question in each instance will be whether such areas have been designated as public forums by the government. It is my opinion, however, that these places are not public forums merely because they may be public property. It has been stated that:
 Not all public places are public forums. The Supreme Court has emphasized repeatedly that a place owned or controlled by the government does not become a public forum simply because members of the public are freely permitted to visit it. As the Court stated in Greer v. Spock, 424 U.S. 828 . . . (1976): "Such a principal of constitutional law has never *Page 5 
existed, and does not exist now. The guarantees of the First Amendment have never meant that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. [Citation omitted.] The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated."
 International Society for Krishna Consciousness v. New Jersey Sports and Exposition Authority, supra, at 159, citing Greer v. Spock, supra, and Adderley v. Florida, 385 U.S. 39 (1966). See also Cornelius v. NAACP Legal Defense and Education Fund, 473 U.S. 788 (1985).
 The question, again, is one of intent of the government to designate public forums. It is my opinion, generally, that state and city workplaces are not traditional public forums. See Cornelius, supra.
Op. Att'y Gen. 1991-307 at 4-5.
Similarly, a number of courts have addressed whether areas in or around a courthouse are considered "public forums" for purposes of exercisingFirst Amendment rights. See, e.g., Huminski v. Corsones, 396 F.3d 53 (2d Cir. 2005) (courthouse, court lands and courthouse parking lot are not public forums); Braun v. Baldwin, 346 F.3d 761 (7th Cir. 2003) (lobby of courthouse is not a traditional public forum); Sammartano v. FirstJudicial Circuit Court, 303 F.3d 959 (9th Cir. 2002) (judicial and municipal complexes are not public fora); Summum v. Callaghan, 396 F3d 53
(10th Cir. 1997) (lawn of county courthouse was a "limited public forum" where county allowed fraternal organization to place monolith thereon);Comfort v. MacLaughlin, 473 F.Supp.2d 1026 (C.D. Cal. 2006) (courthouse grounds are not a public forum); and Grider v. Abramson, 994 F.Supp. 840
(W.D. Ky. 1998) (courthouse steps are a public forum).
As noted above, the inquiry in each case is factual, and reference must be had to the particular circumstances surrounding the use of the property in question. Again, I have not been provided with any information as to any local ordinance or policy on the collection of petition signatures at the Sharp County Courthouse. *Page 6 
Interested parties should confer with county officials for any local ordinance or policies. I hope that the foregoing is of some help in addressing the issue.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Public servants are prohibited from circulating or soliciting signatures on initiative and referendum petitions in any public office of the state, county, or municipal governments of Arkansas, or during the usual office hours, or while on duty for any state agency, county or municipal government. A.C.A. § 7-1-103 (a)(2)(B) (Supp. 2007). There may be some question as to whether this provision, which addresses "initiative and referendum petitions" applies to the collection of signatures on a wet/dry local option petition. Prudence would dictate compliance. See A.C.A. § 3-8-204 (borrowing some initiative and referendum procedures for local option petitions). With regard to early voting, Section 7-1-103(a)(9)(B) (Supp. 2007) states that "During early voting days, no person shall . . . solicit signatures on any petition . . . or do any electioneering of any kind whatsoever during early voting hours in the building or within one hundred feet (100') of the primary exterior entrance used by voters to the building containing the early voting site nor engage in those activities with persons standing in line to vote whether within or without the courthouse." With regard to collecting signatures on election day, Section 7-1-103(a)(9)(A) (Supp. 2007) likewise prohibits the solicitation of petition signatures on election day inside a polling place, or within one hundred feet of the exterior of the building.
[2] The "local option" statutes authorizing petitions on the issue of the sale or manufacture of alcoholic beverages do not mention any particular places where such signatures may be collected (see A.C.A. §§ 3-8-101 — 502 (Repl. 1996 and Supp. 2007)), nor do the more general statutes governing initiative and referendum petitions. See A.C.A. §§7-9-101 — 125 and A.C.A. §§ 14-14-914 — 918 (Repl. 1998 and Supp. 2007).