Dear Delegate Burns:
You have requested our opinion on two issues related to electioneering in the vicinity of polling places:
1. If a public facility is used as a polling place, may the governmental entity that owns the facility prohibit electioneering on the property?
2. Under the Election Code provision barring electioneering within 100 feet of a polling place, how is the distance measured from the front door of the building or from the interior location of the polling room itself?
Our opinion is as follows:
1. The governmental entity that controls public property used for a polling place may not prohibit electioneering in any traditional public forum (typically, a park or public sidewalk) in the vicinity of the facility. Nor may the entity prohibit electioneering in any public forum within the facility that has been designated as such by the entity. The entity may prohibit electioneering elsewhere on its property if it has a reasonable basis for doing so.
2. Electioneering is prohibited inside the perimeter of a 100-foot line established by reference to the entry to the building nearest the polling place.[1]
 I Electioneering on Government Property
Electioneering — urging people to vote for one's favored candidate — is a form of political speech entitled to the greatest degree of First Amendment protection. Eu v. San Francisco Cty.Dem. Central Comm, 489 U.S. 214, 223 (1989). Nevertheless, electioneering, like other First Amendment activity, need not be allowed anywhere on government property. In other words, the mere fact that land is public property does not give members of the public a right to carry out their First Amendment activities there. United States v. Kokinda, 497 U.S. 720 (1990).
In considering First Amendment activity on publicly owned property, the Supreme Court has adopted a "forum analysis" as a method of deciding "when the Government's interest in limiting the use of its property outweighs the interest of those wishing to use the property for other purposes. Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum." Cornelius v. NAACP Legal Defense Educ. Fund,Inc., 473 U.S. 788, 800 (1985). This "forum analysis" comprises three categories.
The first is "traditional public forums," a type of "governmental property that has traditionally been open to the public for expressive activity . . . ." Kokinda, 497 U.S. at 726. The "quintessential public forums" are streets and parks. PerryEducational Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45
(1983). In a traditional public forum, government efforts to bar First Amendment are subject to strict judicial scrutiny and will rarely be upheld. Id.[2]
The second type of forum is government property not traditionally open to expressive activity but "intentionally open[ed] . . . for public discourse." Cornelius, 473 U.S. at 802. An example is meeting facilities at a university. Widmar v.Vincent, 454 U.S. 263 (1981). A "designated public forum" is subject to the same strict constitutional rules as a traditional public forum. Perry, 460 U.S. at 46.
The third type of forum is "[p]ublic property that is not by tradition or designation a forum for public communication . . . ."Id. The government may operate property that is limited to a specific governmental purpose, even if the property has the capacity to be used for expressive purposes. An example is a municipality's street light posts. CityCouncil of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789 (1984). A government prohibition of speech in a nonpublic forum need only be reasonable to be sustained. Kokinda, 497 U.S. at 727.
This "forum analysis" applies when the First Amendment activity in question is electioneering. Suppose, for example, that a room in a public library is used as a polling place. If the library were situated on a public street, the government may not forbid electioneering on the sidewalk outside the 100-foot limit established by statute.[3] A public sidewalk is a traditional public forum. See, e.g., United States v. Grace, 461 U.S. 171,179 (1983). Further, suppose that the library had an interior space (outside the 100-foot limit) in which advocacy groups had been generally permitted to distribute literature. Then, the library could not prohibit electioneering in that dedicated public forum. But the library could refuse to permit electioneering elsewhere on its property, assuming that the electioneering was disruptive of the library's regular business, because the other areas of the library are a nonpublic forum. Such a prohibition would be reasonable, and therefore constitutional. Kokinda,497 U.S. at 733-34.
 II Drawing the 100-Foot Line
Illegal electioneering is a crime. A person may not "canvass, electioneer or post any campaign material in the polling place or beyond a line established by signs posted in accordance with this paragraph." Article 33, § 24-23(a)(4).[4]
The procedure for defining the line is as follows:
 At each polling place, two election judges, one from each principal political party, shall be designated by the election board, and acting jointly, shall post signs outlining a line around the entrance and exit to the building closest to that part of the building in which voting occurs. The line shall be located as near as practicable to 100 feet from the entrance and exit and shall be established after consideration of the configuration of the entrance and the effect of placement on public safety and the flow of pedestrian and vehicular traffic. Signs shall contain the following or comparable language: "No Electioneering Beyond this Point."
§ 24-23(a)(4)(i).[5] Thus, the entrance nearest the polling room becomes the point from which a radius of 100 feet is drawn. The resulting circle marks the zone of prohibited electioneering.
 III Conclusion
In summary, our opinion is as follows:
1. The governmental entity that controls public property used for a polling place may not prohibit electioneering in any traditional public forum (for example, a park or public sidewalk) in the vicinity of the facility. Nor may the entity prohibit electioneering in any public forum within the facility that has been designated as such by the entity. The entity may prohibit electioneering elsewhere on its property if it has a reasonable basis for doing so.
2. Electioneering is prohibited inside the perimeter of a 100 foot line established by reference to the entry to the building nearest the polling place.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
[1] In an advice letter to you dated August 5, 1996, Assistant Attorney General Mary O. Lunden addressed these questions. This opinion elaborates somewhat upon Ms. Lunden's response to your first question and confirms her response to the second.
[2] Even in traditional public forums, "the government may regulate the time, place, and manner of the expressive activity, so long as such restrictions are content neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication." Burson v. Freeman,504 U.S. 191, 197 (1992).
[3] A 100-foot electioneering limit is constitutional.Burson, 504 U.S. at 211.
[4] The penalty for a violation is imprisonment for up to 60 days, a fine of between $50 and $500, or both. Article 33, § 24-23(b).
[5] Under current law, in seven counties the Election Code prohibits electioneering "within a 300 foot radius from the entrance and exit of the building closest to that part of the building in which voting occurs." Article 33, § 24-23(a)(4)(ii). This provision will be repealed on October 1, 1996. See
Chapter 33 of the Laws of Maryland 1996. See also 77 Opinions of theAttorney General ___ (1992) [Opinion No. 92-035 (October 10, 1992)] (concluding that § 24-23(a)(4)(ii) is unconstitutional).
 *Page 42