PD-0893-14 & PD-0894-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/23/2015 12:56:44 PM
Accepted 3/25/2015 9:49:51 AM
ABEL ACOSTA
CLERK

**IN THE COURT OF CRIMINAL APPEALS OF TEXAS**

FILED IN
COURT OF CRIMINAL APPEALS

March 25, 2015

ABEL ACOSTA, CLERK

| | | |
|---|---|---|
| **JOEY FAUST, Appellant** | § | |
| | § | |
| **v.** | § | **NO. PD-0893-14** |
| | § | |
| **THE STATE OF TEXAS, Appellee** | § | |
| | | |
| **RAMON MARROQUIN, Appellant** | § | |
| | § | |
| **v.** | § | **NO. PD-0894-14** |
| | § | |
| **THE STATE OF TEXAS, Appellee** | § | |

---

**ON DISCRETIONARY REVIEW OF CAUSE NUMBERS
02-13-00222-CR and 02-13-00223-CR IN THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS**

_____

**APPELLANTS' POST-SUBMISSION BRIEF**


**J. SHELBY SHARPE**
**State Bar No. 18123000**
**utlawman@aol.com**
**6100 Western Place, Suite 1000**
**Fort Worth, Texas 76107**
**(817) 338-4900/Fax (817)332-6818**

**ATTORNEY FOR APPELLANTS**

**Table of Contents**

Table of Contents ...........................................................................................................i

Table of Authorities ..................................................................................................... ii

Introduction ..................................................................................................................1

Factual Context for Questions ......................................................................................1

    Is There a Constitutional Right to Reach the Ears of a Targeted
      Audience?...............................................................................................................2
    Was the Skirmish Line Unlawful?..............................................................................4
    Is a Person ever Permitted to Disobey a Police Order and
      Still Bring a Constitutional Challenge? ..................................................................6
    When Can a Speaker Be Denied Hearing Access to a Particular
      Audience?................................................................................................................6
    Was the Protesting Done at the Beginning as the Parade
      Marched by Sufficient?...........................................................................................7

Conclusion....................................................................................................................8

# Table of Authorities

**Cases**                                                                                                        **Page**

*Cohen v. California*, 403 U.S. 15, 21 (1971)..............................................................3

*Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640,655
    (1981)..................................................................................................................2

*Kovacs v. Cooper*, 336 U.S. 77, 81 (1949) ..............................................................2

*McCullen v. Coakley*, 134 S.Ct. 2518, 2541 ........................................... 3, 4, 5, 6, 7

*Rosenberger v. Rector and Visitors of The University of Virginia*, 515 U.S. 819,
    828, 829 (1995)...................................................................................................5

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 167 (1969)..............................6

*U.S. v. Baugh*, (9th Cir. 1999) 187 F.3d 1037, 1044 ................................................4

U.S. v. Baugh, 187 F.3d at 1039 ................................................................................8

*United States v. Grace,* 461 U.S. 171 (1983) ............................................................7

*Wood and Savage v. Moss*, 134 S.Ct. 2056 (2014)....................................................6

## Introduction

During oral argument, several questions were asked about other court opinions related to certain issues raised by this appeal. Each of the questions asked with the relevant court opinions are set out hereinafter to help the Court. To better understand the questions, the factual context will be stated first followed by the questions and court opinion answers.

## Factual Context for Questions

The established facts prompting the Court's questions are:

(1)    Skirmish line established to prevent **only** Kingdom Baptist Church from going to the festival area after the parade because of what the police thought these people **might** communicate. R.R. 22, 23, 47 , 51, 52.

(2)    The police were concerned how others **might** respond to these communications. R.R. 38, 48.

(3)    The police were not concerned that the Kingdom Church people would engage "in altercations," but other "people attending the parade **might** not lash out at them." R.R. 38.

(4)    The skirmish line was at "Third and Main Streets. R.R. 8, 13.

(5)    The audience the Kingdom Church people wanted to communicate was in the "eight or nine hundred block of Main." R.R. 45.

(6)    Arresting officers testified that it was not possible to communicate with those in the eight and nine hundred blocks of Main from Third and Main.  R.R. 29, 45.

(7)    Faust and Marroquin were not told the line was temporary.  R.R. 26, 27.

## Is There a Constitutional Right to Reach the Ears of a Targeted Audience?

"Freedom of speech . . . to communicate information and opinion to others," according to the United States Supreme Court, "are all comprehended . . . in the claimed right of free speech."[1]  The *Kovacs* opinion goes on to explain that the "right to speak one's mind would often be an empty privilege in a place and at a time beyond the protecting hand of the guardians of public order."[2]

In a suit factually unlike the cause at bar because it involved restrictions on selling and soliciting on a fairground, our highest court points out that the "*First Amendment* protects the right of every citizen to 'reach the minds of willing listeners and to do so there must be opportunity to win their attention.'"[3]  In order to try to reach the minds of listeners for them to become "willing listeners," it is obvious that "there must be opportunity to win their attention," which can only mean their ears.

---

[1] *Kovacs v. Cooper*, 336 U.S. 77, 81 (1949).
[2] 336 U.S. at 86.
[3] *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 655 (1981).

"The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interest are being invaded [a person's home] in an essentially intolerable manner," the Supreme Court observes in *Cohen v. California.*[4] The court has "consistently stressed that 'we are often 'captives' outside the sanctuary of the home and subject to objectionable speech.'"[5] The opinion goes on to observe that "[a]ny broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections.[6]

The Court, during oral argument, made note of the Supreme Court's abortion opinions where buffer zones were used to separate protestors from ladies entering abortion clinics. One of these opinions is *McCullen v. Coakley.* In that opinion, the court found unconstitutional a Massachusetts criminal statute that created buffer zones between these groups making meaningful communication impossible.[7] The court reasoned that "while the *First Amendment* does not guarantee a speaker the right to any particular form of expression, some forms - - such as normal conversation and leafleting on a public sidewalk - - have historically been more closely associated with the transmission of ideas to others . .

---

[4] 403 U.S. 15, 21 (1971).
[5] Id.
[6] Id.
[7] 134 S.Ct. 2518, 2541.

.. When the government makes it more difficult to engage in these modes of communication, it imposes an especially significant *First Amendment* burden."[8]

Yet, in our case here, there was no opportunity to even try to communicate, much less have a conversation with the target audience.

The Ninth Federal Circuit reversed convictions and sentences of individuals who violated the instruction of National Park Officers not to come within 150 yards of the visitors' center.[9] The court held that it was unconstitutional for Park Services to limit protestors to an area 150 to 175 yards away from a visitors' center because such "distancing of the demonstrators from the intended audience does not provide a reasonable alternative means for communication of [the protestors'] views."[10]

Freedom of speech would become meaningless if the audience the speaker wanted to reach was protected by law from being reached.

## Was the Skirmish Line Unlawful?

How can a skirmish line ever be unlawful? Again, our highest court answers this question in several opinions by beginning with where the skirmish line was placed and its purpose.

---

[8] 134 S.Ct. at 2536.
[9] *U.S. v. Baugh*, (9th Cir. 1999) 187 F.3d 1037, 1044.
[10] Id.

Sidewalks and public ways "occupy a 'special position in terms of *First Amendment* protection' because of their historic role as sites for discussion and debate."[11] Traveling these public ways and sidewalks one "often encounters speech he might otherwise tune out," but the *First Amendment's* purpose is " 'to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail:' "[12] "As a general rule," *McCullen* declares that in such a forum (sidewalk or public way) the government may not 'selectively shield the public from some kinds of speech on the ground that they are more offensive than others.'"[13] Government's ability to restrict speech on public ways and sidewalks is very limited because the "guiding *First Amendment* principle that the 'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content' applies with full force in a traditional public forum."[14]

The skirmish line was also unlawful because it was established to prevent "viewpoint-based speech" that the police felt **might** cause a breach of the peace. "Any regulation against viewpoint speech 'is presumed to be unconstitutional' and '[w]hen the government targets . . . particular views . . . the violation of the *First Amendment* is all the more blatant.'"[15]

---

[11] *McCullen,* 134 S.Ct. at 2529.
[12] Id.
[13] 134 S.Ct. at 25, 29.
[14] Id.
[15] *Rosenberger v. Rector and Visitors of The University of Virginia*, 515 U.S. 819, 828, 829 (1995).

### Is a Person Ever Permitted to Disobey a Police Order and Still Bring a Constitutional Challenge?

The answer is "yes."[16]  In *Shuttlesworth,* people were arrested for violating a licensing law.  The Supreme Court declared emphatically that a person faced with "such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license."[17]  The court went to opine that the "Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands."[18]

### When Can a Speaker Be Denied Hearing Access to a Particular Audience?

How is the arrest here for disobeying police orders different from the conduct of Secret Service agents who denied access to the President to communicate their message, which conduct the Supreme Court upheld?[19]  Even though the Ninth Circuit held that the Secret Service conduct did violate well-established *First Amendment* speech law,[20] the high court disagreed.  The actions of the Secret Service and the *First Amendment* argument of the protestors were considered solely in a discussion of immunity that served as the basis for reversing

---

[16] *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 167 (1969).
[17] 394 U.S. at 167.
[18] 394 U.S. at 168.
[19] *Wood and Savage v. Moss*, 134 S.Ct. 2056 (2014).
[20] 134 S.Ct. at 2068.

the Ninth Circuit's judgment and dismissing the case.[21]  The *Moss* opinion is not analogous for application here.

## Was the Protesting Done at the Beginning as the Parade Marched by Sufficient?

Not according to *United States v. Grace*.[22] There a federal statute prohibited certain protest activities "in the United States Supreme Court building and on its grounds."[23]  Grace was threatened with arrest if she did not cease such activities on the sidewalk in front of the court building.[24]  She filed suit seeking a declaratory judgment that the statute was unconstitutional as applied to her on the sidewalk and the Supreme Court agreed.[25]  The argument that the sidewalks across the street or around the corner was rejected.[26]  "We are convinced, however, that the section, which totally bans the specified communication activity on public sidewalks around the court grounds, cannot be justified as a reasonable place restriction primarily because it has not sufficient nexus with any of the public interests that may be thought to undergird . . . A total ban on that conduct is no more necessary for the maintenance of peace and tranquility on the public sidewalks surrounding the building than on any other sidewalks in the city."[27]

---

[21] 134 S.Ct. 1055.
[22] 461 U.S. 171 (1983).
[23] 461 U.S. at 172.
[24] 461 U.S. at 174.
[25] 461 U.S. at 183.
[26] 461 U.S. at 180.
[27] 461 U.S. at 182, 183.

## Conclusion

The arrest of Faust and Marroquin was made to **prevent** them from traveling a public sidewalk because of speech the police thought they **might** publish that **might** result in a breach of the peace. Accordingly, the skirmish line and the police order not to cross it constituted a prior restraint on speech that they thought might occur making the arrests and convictions unconstitutional. It was the "application of the regulation [here Section 38.15(a)(1) of the Texas Penal Code] to the defendants' *First Amendment* rights" that makes the arrests and convictions unconstitutional.[28] Respectfully, the judgment of the Court of Appeals should be affirmed.

**Respectfully submitted,**

**/s/ J. Shelby Sharpe**_____
**J. SHELBY SHARPE**
**State Bar No. 18123000**
**utlawman@aol.com**
**6100 Western Place, Suite 1000**
**Fort Worth, Texas 76107**
**Telephone: (817) 338-4900**
**Facsimile: (817) 332-6818**

**ATTORNEY FOR APPELLANTS**
**JOEY DARRELL FAUST AND**
**RAMON MARROQUIN**

---

[28] U.S. v. Baugh, 187 F.3d at 1039.

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This reply also complies with the word-count limitations of TEX. R. APP. P. 9.4 (i) because it contains 2,092 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1), as computed by the computer software used to prepare the document.

/s/ J. Shelby Sharpe
J. Shelby Sharpe

## CERTIFICATE OF SERVICE

A true and correct copy of this reply brief has been served on Charles M. Mallin, Assistant Tarrant County District Attorney, 401 W. Belknap St., Fort Worth, Texas 76196-0201, on this 23rd day of March, 2015, via electronic mail.

/s/ J. Shelby Sharpe
J. Shelby Sharpe