**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2884
_____

COLLEEN REILLY; BECKY BITER;
ROSALIE GROSS

v.

CITY OF HARRISBURG; HARRISBURG CITY COUNSEL;
MAYOR ERIC PAPENFUSE, in his official capacity as
Mayor of Harrisburg

Colleen Reilly; Becky Biter,
                              Appellants
_____

On Appeal from the District Court
for the Middle District of Pennsylvania
(M.D. Pa. 1-16-cv-00510)
Honorable Sylvia H. Rambo, U.S. District Judge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 12, 2019

Before: SHWARTZ, KRAUSE, and FUENTES, *Circuit Judges*


(Opinion filed: October 23, 2019)

_____

OPINION[*]

_____

KRAUSE, *Circuit Judge*.

Plaintiffs Colleen Reilly and Becky Biter appeal the District Court's denial of their motion for a preliminary injunction seeking to enjoin the enforcement of a Harrisburg ordinance that restricts certain types of expression within twenty feet of health care facilities on the ground that it violates the First Amendment. Consistent with our recent decision in *Bruni v. City of Pittsburgh* (*Bruni II*), No. 18-1084, slip op. (3d Cir. 2019), we will affirm.

## I.     Background[1]

In November 2012, Harrisburg (the "City") adopted Ordinance No. 12-2012, codified as Harrisburg Code Chapter 3-371 (the "Ordinance"). It states, in relevant part:

> No person or persons shall knowingly congregate, patrol, picket or demonstrate in a zone extending 20 feet from any portion of an entrance to, exit from, or driveway of a health care facility.

Harrisburg, Pa., Code § 3-371.4 (2012); JA 164. The city council also ratified a preamble that set forth "[f]indings" and the "purpose" of the Ordinance, which it articulated as "ensur[ing] that patients have unimpeded access to medical services while protecting the

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because we write primarily for the parties, we include only those facts and elements of the procedural history necessary to resolve this appeal and discuss the facts in greater detail in the context of our analysis below.

First Amendment rights of demonstrators to communicate their message." Harrisburg, Pa., Code § 3-371.2; JA 163–64. Harrisburg adopted the Ordinance following a city council hearing during which the council heard testimony about problems that were occurring outside of the city's two reproductive health facilities, including:

> [T]respassing on private property, blocking the driveway entrance to [the] health care center, photographing or videotaping staff at close range, documenting license plate numbers of staff and patients . . . , yelling harassing and offensive words . . . including threat[s] . . . , following the staff to continue harassment . . . , pounding on the front window of the health center entrance to harass volunteers and those . . . seeking care, [and] standing on private property to photograph employees through office windows.

JA 132.

Plaintiffs attest that they wish to engage within the zone in "sidewalk counseling," which they define as "peaceful . . . one-on-one conversations . . . , prayer[,]" and leafletting through which they attempt to dissuade patients from obtaining an abortion.[2] JA 65. They contend that their "sidewalk counseling and leafletting approach can only be communicated through close, caring, and personal conversations," and the buffer zones created by the Ordinance significantly hinder their ability to effectively communicate their message. JA 78.

---

[2] As in *Bruni II*, *see* slip op. at 11 n.6, we will use the term "sidewalk counseling" in this opinion in accordance with the meaning given to it by Plaintiffs.

In March 2016, Plaintiffs filed a motion to preliminarily enjoin its enforcement on First Amendment grounds, which the District Court denied.[3]  *See Reilly v. City of Harrisburg*, 205 F. Supp. 3d 620, 625, 638–39 (M.D. Pa. 2016).  We reversed and remanded, holding that the District Court had improperly applied the preliminary injunction standard by shifting the burden of demonstrating narrow tailoring to Plaintiffs; however, we did not address the merits of Plaintiffs' constitutional challenge.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 176–80 (3d Cir. 2017) (*Reilly I*).

On remand, the District Court held an evidentiary hearing on Plaintiffs' preliminary injunction motion.  *Reilly v. City of Harrisburg*, 336 F. Supp. 3d 451, 456 (M.D. Pa. 2018).  The Court received numerous pieces of documentary evidence and heard substantial testimony about the history of the Ordinance and Harrisburg's financial difficulties at the time of the Ordinance's adoption, among other topics.  *See id.*  Based on this new evidence and considering the standard for a preliminary injunction as clarified in *Reilly I*, the District Court again denied Plaintiffs' motion.  *Id.* at 474.  In doing so, the Court concluded that the Ordinance permitted sidewalk counseling.  *Id.* at 459 n.3, 463–64.  This appeal followed.

---

[3] Although not relevant here, Plaintiffs also alleged that the Ordinance violated their First Amendment rights to free exercise of religion and assembly as well as their Fourteenth Amendment rights to equal protection and due process.  *See Reilly v. City of Harrisburg*, 205 F. Supp. 3d 620, 625 (M.D. Pa. 2016).

## II.    Discussion[4]

Plaintiffs seek to preliminarily enjoin enforcement of the Ordinance.  To obtain a preliminary injunction, an "extraordinary remedy," *Doe ex rel. v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (citation omitted), the moving party must show "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted," *Reilly I*, 858 F.3d at 176 (alteration in original) (citation omitted).  If these two "threshold" factors are met, a court then considers the remaining two factors—"(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest"—and determines, on balance, whether to grant the requested preliminary relief.  *Id.* (citation omitted).

At issue here is the first factor: whether Plaintiffs have a sufficient likelihood of succeeding on the merits of their constitutional challenge to the Ordinance.[5]  In support of their contention that the Ordinance violates their First Amendment rights, Plaintiffs

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a), and we have jurisdiction under 28 U.S.C. § 1292(a)(1).  "When reviewing a district court's [denial] of a preliminary injunction, we review the court's findings of fact for clear error, its conclusions of law de novo, and the ultimate decision . . . for an abuse of discretion." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (citation omitted).  Because this is a First Amendment case, however, "we must conduct an independent examination of the factual record as a whole." *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010) (internal quotation marks and citation omitted).

[5] As we explained in *Riley I*, however, in First Amendment cases, "the [g]overnment bears the burden of proof on the ultimate question of [a statute's] constitutionality."  858 F.3d at 180 (alterations in original) (citation omitted).

5

make four arguments: (1) "[t]he District Court erred when it *sua sponte* rewrote the Ordinance to permit sidewalk counseling" to save it from constitutional infirmity, Appellants' Br. 23; (2) the Ordinance is unconstitutionally vague and overbroad; (3) the Ordinance is content based and subject to strict scrutiny; and (4) even if it is considered content neutral, the Ordinance is not narrowly tailored and thus does not survive intermediate scrutiny.[6]  As many of Plaintiffs' arguments are foreclosed by our recent decision in *Bruni II*, we begin there and then address Plaintiffs' arguments in turn.

### A. Our Decision in *Bruni II*

---

[6] Plaintiffs also argue that the remaining preliminary injunction factors of irreparable injury, public interest, and balance of harms support injunctive relief and that we should reassign this case to a different district court judge.  For the reasons explained below, we conclude that Plaintiffs do not have a sufficient likelihood of prevailing on the merits of their claim—a threshold requirement—and thus do not address these remaining factors.  We also decline to exercise our discretion to reassign this case to a different district court judge.  *See United States v. Bergrin*, 682 F.3d 261, 282 (3d Cir. 2012) ("[R]eassignment is an extraordinary remedy that should seldom be employed." (citation omitted)).  Although we agree that federal courts discussing the significant constitutional rights on both sides of this issue should address the parties with appropriate sensitivity and respect, including the respect due to the sincere religious beliefs and peaceful practices of sidewalk counselors as defined by Plaintiffs, we are not persuaded that the few isolated remarks on which Plaintiffs rely to seek recusal indicate bias or partiality on the part of the District Judge here.  As a general matter, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," *Liteky v. United States*, 510 U.S. 540, 555 (1994), and here, while the District Judge appeared at certain points to express skepticism about the peacefulness of sidewalk counseling, the record before her did reflect instances when persons who called themselves "sidewalk counselors" had engaged in loud and aggressive confrontations.  That conduct, however, brings such persons outside of Plaintiffs' definition, and like the Supreme Court in *Schenck v. Pro-Choice Network of Western New York*, we reject the notion that "protestors" and "sidewalk counselors" as Plaintiffs use the term are one and the same. 519 U.S. 357, 363 (1997).

In *Bruni II*, individuals who identified as sidewalk counselors challenged an almost identical ordinance that created a fifteen-foot buffer zone outside the entrance of any hospital or healthcare facility in the city of Pittsburgh. *Bruni II*, slip op. at 5, 9. As here, the ordinance stated that "[n]o person or persons shall knowingly congregate, patrol, picket or demonstrate" in the proscribed zone, *id.* at 9 (quoting Pittsburgh, Pa., Code § 623.04 (2005)), and, although the plaintiffs' sidewalk counseling consisted only of peaceful one-on-one conversations and leafletting, the city of Pittsburgh interpreted the ordinance to prohibit the plaintiffs' actions, *Bruni II*, slip op. at 12.

Looking at the plain meaning of the ordinance's language, we concluded that the proscribed activities—congregating, patrolling, picketing, and demonstrating—did not encompass the sidewalk counseling in which the plaintiffs engaged. *Id.* at 24–26. As such, we found the ordinance "readily susceptible" to a narrowing construction under the doctrine of constitutional avoidance. *Id.* at 21 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988)); *id.* at 24–26. In the absence of a state court's interpretation to the contrary, we therefore construed the ordinance narrowly not to prohibit sidewalk counseling within the zone. *Id.* at 22 n.14, 27.

With the ordinance so interpreted, we rejected the plaintiffs' argument that the ordinance was content based. *Id.* at 28. Because the ordinance did not prohibit sidewalk counseling—or any other peaceful one-on-one conversations on any topic or for any purpose—we concluded that it neither regulated speech based on subject matter, function, or purpose, nor required law enforcement to examine the content of the speech to determine if a violation had occurred. *Id.* at 26–28. Indeed, we said, the Supreme Court

"has repeatedly considered regulation of [the proscribed] activities to be based on the manner in which expressive activity occurs, not its content, and held such regulation content neutral." *Id.* at 26 (citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763–64 (1994); *Snyder v. Phelps*, 562 U.S. 443, 456 (2011); *Hill v. Colorado*, 530 U.S. 703, 721 (2000); *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 383–85 (1997); *United States v. Grace*, 461 U.S. 171, 181–82 (1983)). Therefore, we concluded the ordinance was content neutral and subject to intermediate scrutiny. *Bruni II*, slip op. at 28.

Applying intermediate scrutiny, the ordinance, as properly interpreted to exclude sidewalk counseling, passed muster. Focusing on the "narrow tailoring" prong, we concluded that the ordinance did not "burden substantially more speech than" was "necessary to further the government's legitimate interests" in protecting access to pregnancy-related services, ensuring public safety, and eliminating neglect of law enforcement needs. *Id.* at 30 (quoting *McCullen v. Coakley*, 573 U.S. 464, 486 (2014)). Specifically, we explained that where a restriction imposes a significant burden on speech, the government must show that it tried or "seriously considered[] substantially less restrictive alternatives," such as arrests or targeted injunctions. *Bruni II*, slip op. at 31. But where the burden on speech is not significant, "a less demanding inquiry is called for." *Id.* Because the ordinance was limited in scope and size, we concluded that the burden on speech was not significant. *Id.* at 32–33. And because Pittsburgh had "attempt[ed] or consider[ed] some less burdensome alternatives," such as the use of an overtime police detail and enforcement of existing criminal laws, "and conclud[ed] they

8

were unsuccessful in meeting the legitimate interests at issue," the city had satisfied its corresponding burden. *Id.* at 34 (citations omitted). We therefore held that the ordinance was narrowly tailored and survived intermediate scrutiny. *Id.* at 35–36.

With this guidance, we now turn to Plaintiffs' arguments.

## B. Plaintiffs' Arguments

*First*, the District Court did not err by interpreting the Ordinance narrowly to exclude sidewalk counseling. As we explained in *Bruni II*, the doctrine of constitutional avoidance counsels that "[i]n the absence of a limiting construction from a state authority, we must presume any narrowing construction or practice to which the law is fairly susceptible." *Id.* at 22 (alteration in original) (internal quotation marks omitted) (quoting *Brown v. City of Pittsburgh*, 586 F.3d 263, 274 (3d Cir. 2009)); *see also Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 215 n.10 (3d Cir. 2001). Here, as in *Bruni II*, no state court has interpreted the Ordinance, and the Ordinance is "fairly susceptible" to a narrowing construction that excludes sidewalk counseling from its reach because the plain meanings of the words "congregate," "patrol," "picket," and "demonstrate" do not cover peaceful one-on-one conversations or leafletting. *Bruni II*, slip. op. at 24–26. The District Court therefore did not "rewrit[e]" the Ordinance but simply "reinterpret[ed]" it consistent with the plain meaning of its terms.[7] *Free Speech Coal., Inc. v. Attorney Gen.*

---

[7] Plaintiffs' arguments to the contrary are not persuasive. That the City asserts that the Ordinance covers Plaintiffs' sidewalk counseling is not dispositive. *See Bruni II*, slip op. at 22 n.14. And given that our precedent is clear that a federal court may interpret a state statute or municipal ordinance narrowly to avoid constitutional infirmity where it is readily susceptible to such an interpretation, *see id.* at 22–24; *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 539 (3d Cir. 2012); *Brown*, 586 F.3d at

9

*of U.S.*, 677 F.3d 519, 539 (3d Cir. 2012) (quoting *United States v. Stevens*, 559 U.S. 460, 481 (2010)).

*Second*, the Ordinance is neither unconstitutionally vague nor overbroad. A law is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes . . . arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732 (citation omitted). Although Plaintiffs are correct that the Ordinance does not provide definitions of the itemized activities that are prohibited within the zone, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). And, here, we do have guidance from the Supreme Court, which has found words like "demonstrate" not impermissibly vague, particularly when viewed in context, *see Schenck*, 519 U.S. at 383,[8] and, as is true of the Ordinance, when such words are qualified by a scienter requirement, *see Hill*, 530 U.S. at 732–33. At bottom, Appellants' vagueness and overbreadth arguments rely on the assumption that the Ordinance can be interpreted to cover sidewalk counseling.[9] As we

---

274; *Saxe*, 240 F.3d at 215–16, 215 n.10, it is of no consequence that some other circuits take a contrary approach, *Bruni II*, slip op. at 22 n.14.

[8] Indeed, in *Schenck*, the Supreme Court "quickly refuted" an argument that the term "demonstrating" was vague. 519 U.S. at 383 ("When the injunction is read as a whole, we believe that people of ordinary intelligence (and certainly defendants, whose demonstrations led to this litigation in the first place) have been given a reasonable opportunity to know what is prohibited." (internal quotation marks and citations omitted)).

[9] Plaintiffs also argue that the Ordinance is vague "because it does not require Defendants to visibly mark the buffer zone boundaries on the sidewalk," Appellants' Br.

conclude that is not a reasonable reading of the Ordinance's plain language, *see Bruni II*, slip op. at 28, however, the Ordinance is neither unconstitutionally vague nor overbroad.

*Third*, the Ordinance is not content based and thus not subject to strict scrutiny.  A law is content based if it (1) regulates speech based on "subject matter," "function," or "purpose"; (2) "cannot be justified without reference to the content of the regulated speech"; or (3) was "adopted by the government because of disagreement with the message [the speech] conveys." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) (alteration in original) (internal quotation marks and citations omitted).  Plaintiffs argue that the Ordinance is content based under each of these tests.  We disagree.

Plaintiffs first contend that the Ordinance is content based because it regulates speech "whose function or purpose is to 'demonstrate' or 'picket'" but not "speech whose function or purpose is to communicate something else." Appellants' Br. 44.  But, as we explained in *Bruni II*, "demonstrating" and "picketing," both of which have obvious visible manifestations, go to "the manner in which expressive activity occurs, not its content." *Bruni II*, slip op. at 26 (citing *Madsen*, 512 U.S. at 759, 763–64; *Snyder*, 562

_____

37, and there is some evidence in the record indicating that the lack of clear demarcation of the zone has created uncertainty about its bounds.  While we agree with Plaintiffs that this raises vagueness concerns, such concerns are ameliorated in large part by the Ordinance's scienter requirement.  *See Brown*, 586 F.3d at 291 n.34 (citing *Hill*, 530 U.S. at 732).  And, "[a]s always, enforcement requires the exercise of some degree of police judgment." *Hill*, 530 U.S. at 733 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972)).  To the extent there remain vagueness concerns, however, we are confident that if the District Court determines a remedy is necessary on remand, it could fashion one that does not require disposing of the Ordinance in its entirety.  *See, e.g.*, *Brown v. City of Pittsburgh*, No. 06-393, 2010 WL 2207935, at *2 n.2 (W.D. Pa. May 27, 2010).

11

U.S. at 456; *Hill*, 530 U.S. at 721; *Schenck*, 519 U.S. at 383–85; and *Grace*, 461 U.S. at 181–82).

Plaintiffs next argue that the Ordinance is content based because it bans "only discussions 'of substance'" and "leafletting about abortion alternatives" in the buffer zone, thus requiring law enforcement to examine the content of any speech to determine whether it is prohibited within the zone. Appellants' Br. 44. That being so, Plaintiffs contend, the Ordinance "cannot be justified without reference to the content of the regulated speech." *Id.* (citation omitted). But the District Court's narrow interpretation renders this argument moot: The Ordinance as properly interpreted does not prohibit sidewalk counseling—or any other peaceful one-on-one conversations about any subject or for any purpose—in the zone. Therefore, "there is no need for law enforcement 'to examine the content of the message . . . to determine whether a violation has occurred.'" *Bruni II*, slip op. at 28 (omission in original) (quoting *McCullen*, 573 U.S. at 479)).

Finally, Plaintiffs contend that the Ordinance is content based because it was "enacted . . . to counteract listeners' reactions to speech," an impermissibly content-based purpose. Appellants' Br. 40 (capitalization omitted). Specifically, they point to three statements as evidence of a content-based motive for enacting the Ordinance: a comment at a city council hearing calling the legislation necessary to "protect the dignity" of patients[10]; the Ordinance's description of its "purpose" as assisting police in their

---

[10] Plaintiffs erroneously imply that it was a Planned Parenthood employee who made this and other allegedly offending comments. But "a resident of the neighborhood" made these comments. JA 132.

12

"effort[s] to prevent violent confrontations"; and Defendants' statement in a brief that "Harrisburg determined that it needed a buffer zone as a preventative measure" in part because "[s]ometimes, a patient's loved one would react protectively, escalating the situation." Appellants' Br. 41 (alterations in original) (citations omitted).

None of these statements indicate that the City adopted the Ordinance for an impermissibly content-based reason. To begin with, the interests identified in the Ordinance itself—providing "access to health care facilities," "prevent[ing] violent confrontations," and "protecting the First Amendment rights of demonstrators to communicate their message"—are content neutral. JA 163–64; *see McCullen*, 573 U.S. at 480–81. Indeed, the Supreme Court has said so repeatedly. *See Bruni II*, slip op. at 29 (citing cases). Plaintiffs' attempt to transform the content-neutral goal of "prevent[ing] violent confrontations"—and the related goal of de-escalating tense situations—into a content-based restriction akin to a heckler's veto is unavailing: "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."[11] *McCullen*, 573 U.S. at 480 (alteration in original) (quoting *Ward*, 491 U.S. at 791); *see Startzell v. City of Philadelphia*, 533 F.3d 183, 200 (3d Cir. 2008) (distinguishing a "heckler's veto," which

---

[11] Moreover, contrary to Plaintiffs' argument, the Ordinance does not impermissibly regulate the "undesirable effects that arise from 'the direct impact of speech on its audience' or 'listeners' reactions to speech,'" because "[w]hether or not a single person reacts to abortion protesters' chants or petitioners' counseling, large crowds outside abortion clinics can still compromise public safety, impede access, and obstruct sidewalks." *McCullen*, 573 U.S. at 481 (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988)).

13

is an "impermissible content-based restriction on speech where the speech is prohibited due to an anticipated disorderly or violent reaction of the audience," from a "content-neutral time, place, or manner restriction"). And as for the allegedly offending stray comment, it is irrelevant because the individual resident who uttered it does not speak for the City. We therefore agree with the District Court that the Ordinance is content neutral.

*Fourth*, the Ordinance is narrowly tailored and therefore survives intermediate scrutiny. To be narrowly tailored, a regulation must not "burden substantially more speech than is necessary to further the government's legitimate interests." *McCullen*, 573 U.S. at 486 (quoting *Ward*, 491 U.S. at 799). As was true in *Bruni II*, the Ordinance, as properly interpreted, does not impose a significant burden on speech. The scope of prohibited expressive activities is identical to that in *Bruni II* and the fact that the buffer zone is five feet larger than the zone in *Bruni II* is not enough to render the burden on speech significant. *See Bruni II*, slip op. at 30 ("[W]e afford[] some deference to a municipality's judgment in adopting a content-neutral restriction on speech." (second alteration in original) (citation omitted)). Indeed, the buffer zone is significantly smaller than the thirty-five-foot zone in *McCullen* that was not narrowly tailored because, among other things, it "carve[d] out a significant portion of the adjacent public sidewalks, pushing petitioners well back from the clinic's entrances and driveways." 573 U.S. at 487.

Also, as in *Bruni II*, Harrisburg did not "resort[] to a fixed buffer zone . . . in the first instance" but "attempt[ed] or consider[ed] some less burdensome alternatives and

14

conclud[ed] they were unsuccessful in meeting the legitimate interests at issue."[12] *Bruni II*, slip op. at 34. At the hearing on the preliminary injunction, a councilperson testified that existing criminal laws prohibiting trespassing, excessive noise, and disorderly conduct were insufficient to keep protests under control before the Ordinance's enactment. This was in large part due to the City's inability to expend police resources to enforce these laws because of the City's grave financial situation: As the former special counsel to the Harrisburg City Council explained, with over 300 million dollars in debt, the City was placed under receivership status and could afford neither to hire additional police officers nor to pay officers overtime to patrol the clinics.[13] *See Turco v. City of*

---

[12] Plaintiffs contend that Defendants have not carried their burden because "Defendants' entire 'meaningful record' of what they considered prior to enacting the Ordinance consists of the 12-page transcript of the only council meeting where the Ordinance was substantively discussed" and that record was "devoid of any serious consideration of less restrictive alternatives." Appellants' Br. 52. But we agree with the District Court that a local government is not required to "produce all available evidence and consider alternatives at a single, recorded hearing before taking action." *Reilly*, 336 F. Supp. 3d at 466. Even when a burden on speech is significant, all that our precedent requires is that "substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out," *Bruni v. City of Pittsburgh* (*Bruni I*), 824 F.3d 353, 370 (3d Cir. 2016) (citation omitted), not that the only evidence a court can consider in determining whether the government has satisfied its burden must be derived from a committee council hearing that was recorded. More importantly, the burden here is not significant, so the City need only show that the restriction did not "burden[] *substantially* more speech than . . . necessary to further the government's legitimate interests." *Bruni II*, slip op. at 35 (quoting *McCullen*, 573 U.S. at 486). Through declarations, documentary evidence, and in-court testimony, Defendants have done so.

[13] The City also decreased police benefits, causing officers to leave the force and fewer to join, at times leaving only four to eight police officers to patrol the City—a consequence the effects of which Harrisburg continues to feel to this day. Plaintiffs suggest that the City's financial woes could not have been as bad as Defendants say—and as the District Court found—because Harrisburg's Chief of Police said during the same hearing at which the Ordinance was discussed that he would "step up enforcement of the

15

*Englewood*, 935 F.3d 155, 167, 169 (3d Cir. 2019) (recognizing relevance of a city's "financial restraints" and police department's "finite resources" in the narrow tailoring analysis). The record also demonstrates that Harrisburg considered differently sized zones and, based on the competing interests at stake, settled on twenty feet as the optimal size, rejecting Planned Parenthood's request for a twenty-four-foot zone. Thus, given that the burden the Ordinance imposes on speech is not significant and the City has demonstrated that it tried or considered some less-restrictive alternatives, we conclude that the Ordinance is narrowly tailored and survives intermediate scrutiny. That being so, Plaintiffs do not have a "reasonable probability of eventual success in the litigation," *Reilly I*, 858 F.3d at 176 (citation omitted), and the District Court therefore did not err in denying their motion for a preliminary injunction.[14]

## III.    Conclusion

For the foregoing reasons, we will affirm the decision of the District Court.

---

City's noise and trash ordinances." Appellants' Br. 57. But the Police Chief's testimony merely reflects in context that councilmembers were not pleased that those ordinances were not adequately being enforced—no doubt due at least in part to scarce resources—and that the Police Chief would try to address their concerns going forward. His offer to "help . . . out" the City's code enforcement division while its leader was having personal difficulties, JA 572, also does not demonstrate that there were resources available to station officers outside the City's reproductive health facilities on a continuous basis.

[14] We recognize that the City could have a legitimate concern about access to healthcare facilities if there are multiple one-on-one conversations that block access to the facilities. *See McCullen*, 573 U.S. at 486–87. The City may then have occasion to revisit the terms of the Ordinance, having developed a record that would satisfy *McCullen* and *Bruni I*, as well as the content-neutrality requirement of *Reed*. *See Turco*, 935 F.3d at 162–63.